Rick Appeal.

Argued November 15, 1960.  Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Samuel B. Russell,* with him *Harold J. Ryan,* and *Ryan & Russell,* for appellant.

*C. Wilson Austin,* City Solicitor, with him *Robert F. Shapiro,* Assistant City Solicitor, for City of Reading, appellee.

Opinion Per Curiam, January 16, 1961:

This is an appeal from an order of the court below fixing the assessment of the appellant's property for taxation by the City of Reading for the triennium 1958-1960.

Appellant's assessment, as originally fixed by the assessor, was $19,650, which was 78.6% of the property's fair market value of $25,000.  Upon appeal to the Council of the City of Reading, sitting as a Board

of Revision of Taxes and Appeals, the assessment was reduced to $17,500 and, on appeal to the Court of Common Pleas, it was further reduced by the court to $16,-800, which is 67.2% of the property's fair market value. It is that order which the property owner, seeking a still further reduction in her property assessment, has appealed to this court.

There are more than 30,000 taxable units of real property in the City of Reading. The appellant bases her claim to a further reduction in her tax assessment on the fact that some 76 newly constructed dwelling houses, which were built for sale, were assessed at 35% of their cost or selling price. A few other disparities in the percentages of market value at which properties were assessed were shown. All in all, they were sufficient to cause the court below to note that, "It is at once apparent that in the interest of uniformity of taxation, the municipality should give serious consideration to correcting an unfair situation which now exists in regard to assessments on real estate in the City of Reading, and which apparently has existed for many years through administrations of all three political parties."

The appellant insists that, because the assessor has assessed the 76 newly constructed houses at 35% of their selling price, she is entitled to have her property assessed at 35% of its market value. The court answered this by saying, "For the court to follow such reasoning, we would be required to overlook the fact that homes comparable to appellant's home and located on the same beautiful avenue are assessed at an average of 76.5% of market value", which, incidentally, is 9.3% more than appellant's final assessment. The court correctly concluded that to fix the appellant's property assessment at 35% of its market value would be unconscionable and would serve to bring about less uniformity than now exists, and added that, "Appel-

lant has cited no authority, and our own research has produced no case which would support the contention that a property owner is entitled to have a property assessed at a rate comparable to what has been done in the instances of a few properties out of a total of more than 30,000 properties."

We are unable to see, under the facts of this case, wherein the court below can justly be said to have erred.

Order affirmed.