Deitch Company, Appellant, *v.* Board of
Property Assessment.

Argued October 7, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument re-fused March 24, 1965.

*David L. Cohen,* with him *Alexander Cooper,* and *Cooper, Goodman & Schwartz,* for appellant.

*James Victor Voss,* Assistant County Solicitor, with him *Francis A. Barry,* First Assistant County Solicitor, and *Maurice Louik,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE ROBERTS, February 25, 1965:

The Deitch Company owned property in the Borough of Sharpsburg, Allegheny County, which was assessed by the Board of Property Assessment, Appeals and Review, at $185,420 for the triennium beginning in the year 1959. This assessment consisted of a land valuation in the amount of $108,680 and a building and machinery valuation in the amount of $76,740. The initial assessment was higher, but an appeal to the Board resulted in reduction of the land valuation.

The appellant-owner sought further relief in an appeal to the Court of Common Pleas of Allegheny County. By stipulation of counsel, the only issue tried before that court was the valuation of the land. Appel-

lant contended that the assessment exceeded the fair market value of the land and that it did not comply with the requirements of uniformity imposed by law. The Board offered into evidence a certified transcript of the assessment of the property involved. Appellant then called a real estate expert who testified that the fair market value of the land was $20,200, and who further testified concerning the fair market values of several other properties. In arriving at these valuations, the expert witness indicated that he considered, among other things, sale and holding prices in the area, physical factors, location, and access to and from the properties involved. He also testified as to the assessed valuations of each of the properties and constructed ratios based on a comparison of assessed values to market values. The ratios so constructed ranged from 46% to 72% of market value.[1]

In rebuttal, the Board offered the testimony of one of its assessors, not as an expert witness, but for the sole purpose of showing who made the assessment and what factors were considered. The assessor testified that after considering use, location, topography, a few sales in the vicinity, and comparable assessments, he recommended a land assessment of $124,400 which the Board reduced to $108,680.

The court below dismissed the appeal on two grounds: first, that appellant, with the consent of appellee, did not attack the complete assessment as required by *North Park Village, Inc. v. Bd. of Property Assessments*, 408 Pa. 433, 184 A. 2d 253 (1962), and secondly, that the evidence presented by appellant had fallen short of the evidence required to meet its burden of proof. The court's opinion concerning the lat-

---

[1] Appellant also called, at a later time, the president of the Deitch Company, who testified that the market value of the land was $20,000.

ter point is somewhat unclear but appears to indicate that, in its view, the taxpayer must produce testimony with respect to comparable properties in order to construct a ratio of assessed value to market value. The opinion further appears to define comparable properties as properties which are similar properties of the same nature in the neighborhood of the taxpayer's property.

The trial of this case in conformity with the understanding of counsel for both parties and of the court that only the assessment on land was being attacked was improper. The parties may not, by stipulation or otherwise, circumvent our holding in *North Park Village.* Although the lower court in its opinion correctly recognized the rule established by that decision, it incorrectly allowed itself to be governed by the stipulation rather than the rule. The limits of such a stipulation in assessment cases is discussed in *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Bd. of Property Assessment,* 417 Pa. 243, 209 A. 2d 394 (1965).

Furthermore, the apparent misconception of the court below with respect to the relevance of comparability in the determination of an equalization ratio is shared by other courts and boards of assessment. We therefore feel compelled to clarify the guidelines which are applicable in assessment cases.

Under the Act of May 22, 1933, P. L. 853, §402, as amended, 72 P.S. §5020-402, real estate in Allegheny County is to be assessed at its actual value. The term actual value means the market value and market value has been defined as a price which a purchaser, willing but not obliged to buy, would pay an owner willing, but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied. *Buhl Foundation v. Bd. of Property Assessment,* 407 Pa. 567, 570, 180 A. 2d 900, 902

(1962). However, we, too, recognize what the Legislature has recognized—that, as a practical matter, in Allegheny County, as in many other counties, real estate is frequently assessed at a percentage which is less than market value. Thus, the Act just cited further provides that the assessors should accomplish equalization of the subject property in accordance with other assessments in the taxing district. And more importantly, Article IX, §1, of the Constitution of Pennsylvania provides that all taxes must be uniform on the same class of subjects within the territorial limits of the authority levying the tax.

In *Brooks Bldg. Tax Assessment Case,* 391 Pa. 94, 137 A. 2d 273 (1958), the taxpayer produced evidence that several properties were assessed at ratios ranging from 40.2% to 57.2% while his property was assessed at 91%. The lower court in that case denied relief on the ground that the taxpayer had not proved that there was a fixed percentage of full value that had been applied to the great majority of the properties in the taxing district. In reversing that ruling, this Court concluded that "if an assessor, without actual fraud, negligently, foolishly, or capriciously assessed some properties at 10% of actual value, other similar properties at 20%, other similar properties at 50%, others at 75% and plaintiff's at 90%, it would be unjust and ridiculous to hold that since there was no *fixed* ratio of assessed value *generally* throughout the district, plaintiff failed to prove a lack or violation of uniformity, which the Constitution requires." Id. at 98, 137 A. 2d at 275. In arriving at that conclusion, we construed the uniformity provision of the Constitution of Pennsylvania to require that taxes "must be applied with uniformity upon similar kinds of business or property and with substantial equality of the tax burden to all members of the same class . . . ." Id. at 99, 137 A. 2d at 275. We therefore held that the tax-

payer had met its burden of proof by producing evidence of the market value of its property and of similar properties of the same nature in the neighborhood and by proving the assessments of each of those properties and the ratio of assessed value to actual or market value. We remanded the case to the lower court for further proceedings without reaching the question of the amount of relief to which the taxpayer was entitled or the method by which any reduction should be computed.[2]

In *Rick Appeal*, 402 Pa. 209, 167 A. 2d 261 (1961), we made it clear that a taxpayer is not entitled to have his assessment reduced to the lowest ratio of assessed value to market value to which he could point in the taxing district if such lowest ratio does not reflect the common assessment level which prevails in the district as a whole. Although in *Rick* the taxpayer showed that his property had been assessed at 67.2% of its full value, while 76 newly-constructed houses were assessed at only 35%, we denied relief. The rationale underlying our decision was that a property owner is not entitled to have a property assessed at a rate comparable to what has been done in the instances of a few properties out of a total of more than 30,000 properties, where the evidence shows that the under-assessments are not representative of the district as a whole, and that the taxpayer has, in fact, not been assessed at more than the common level in the district. See Notes, "Inequality in Property Tax Assessments: New Cures For an Old Ill," 75 Harv. L. Rev. 1374, 1384-85 (1962).

---

[2] "Because of the varying values and ratios fixed by the witnesses, we deem it wise not to attempt to fix the assessment in this Court." 391 at 102, 137 A. 2d at 276.

We did not in any way imply that the method employed by the taxpayer in *Brooks* is the exclusive method of meeting the burden of proof. See discussion in text, infra.

From these previous decisions there emerges the principle that a taxpayer should pay no more or no less than his proportionate share of the cost of government. Implementation of this principle would require that an owner's assessment be reduced so as to conform with the common level of assessment in the taxing district. In *Siegal v. City of Newark*, 38 N.J. 57, 183 A. 2d 21 (1962), the Supreme Court of New Jersey reached the same conclusion: "Hence, as to assessments made, the injured taxpayer is remitted to a different remedy, to wit, a reduction of his assessment to the 'common level' of assessments in the taxing district. The thesis is that the taxpayer is injured by so much of the tax bill as exceeds his *pro rata* share of the burden of local government. True, there may remain some residual harm in that the dollar value of the reduction may be recaptured in another year from all properties including that of the successful appellant. But perfect relief is inherently impossible. If the taxpayer pays no more than his fair share for the year in question, practical justice is achieved. Surely, if the taxpayer who appeals is permitted to pay less than his fair share, the injustice to those who were overassessed but did not complain would be compounded. Hence, we held in Kents that an excessive assessment should be reduced to what it would have been if all taxable real property had been assessed equally." Id. at 61, 183 A. 2d at 23.

Of course, the question arises as to the definition of the term "common level". Where the evidence shows that the assessors have applied a fixed ratio of assessed to market value throughout the taxing district, then that ratio would constitute the common level. However, where the evidence indicates that no such fixed ratio has been applied, and that ratios vary widely in the district, the average of such ratios may be considered the "common level". *Siegal v. City of*

*Newark,* supra, at 64, 183 A. 2d at 24.[3] Furthermore, it may be that the evidence will show some percentage of assessed to market value about which the bulk of individual assessments tend to cluster, in which event such percentage *might* be acceptable as the common level. Ibid.

Of course, a multitude of suits resulting in a reduction of many assessments to a common level, might prove self-defeating since an extremely large number of such reductions might ultimately lower the common level in the district. It is, therefore, imperative that assessors act to correct both underassessments and overassessments as expeditiously as possible in order to prevent serious reduction of the revenues upon which governmental bodies depend.

The proceedings in the trial court are de novo[4] and the proper order of proof in cases such as the present one has long been established. The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary device is ended. Thereafter, such record, of itself, loses the weight previously accorded to it and may not then

---

[3] For an extensive discussion on this point see Notes, "Inequality in Property Tax Assessments: New Cures for an Old Ill," 75 Harv. L. Rev. 1374 (1962).

[4] *Kemble's Estate,* 280 Pa. 441, 447, 124 Atl. 694, 696 (1924); *Pennsylvania Stave Co.'s Appeal,* 236 Pa. 97, 102, 84 Atl. 761, 763 (1912).

influence the court's determination of the assessment's correctness.[5] See *Kemble's Estate*, 280 Pa. 441, 447, 124 Atl. 694, 696 (1924); *Ritter's Appeal*, 147 Pa. Superior Ct. 236, 24 A. 2d 470 (1942). Of course, the taxpayer still carries the burden of persuading the court of the merits of his appeal, but that burden is not increased by the presence of the assessment record in evidence.

Of course, the taxing authority always has the right to rebut the owner's evidence and in such a case the weight to be given to all the evidence is always for the court to determine. The taxing authority cannot, however, rely solely on its assessment record in the face of countervailing evidence unless it is willing to run the risk of having the owner's proof believed by the court. Where the taxpayer's testimony is relevant, credible and unrebutted, it must be given due weight and cannot be ignored by the court. It must necessarily be accepted. *McKnight Shopping Center, Inc. v. Bd. of Property Assessment*, 417 Pa. 234, 242, 209 A. 2d 389, 393 (1965); *Kaemmerling's Appeal*, 282 Pa. 78, 83, 127 Atl. 439, 441 (1925); *Kemble's Estate*, 280 Pa. 441, 447, 124 A. 2d 694, 696 (1924).

In presenting his case, the taxpayer must first offer proof with respect to the actual or market value of the property. For this purpose, many factors may be relevant. *Park Drive Manor, Inc. Tax Assessment Case*, 380 Pa. 134, 136, 110 A. 2d 392, 394 (1955). The determination must be ultimately made, on the basis of competent testimony, as to the worth of the property in the market at a fair sale. *Buhl Foundation v. Bd. of Property Assessment*, supra. Recent sales of comparable properties, that is, properties of a similar nature, are, of course, persuasive in helping to establish

---

[5] This is, of course, the essence of "prima facie evidence". See Black's Law Dictionary 1353-54 (1957).

the market value. However, the properties compared need not be identical. In comparing such properties, the aim is to show their relative values by bringing out characteristic qualities, whether similar or divergent. Comparison based on sales may be made according to location, age, income, expense, use, size, type of construction, and in numerous other ways. *McKnight Shopping Center, Inc. v. Bd. of Property Assessment,* 417 Pa. 234, 209 A. 2d 389 (1965).

In determining, however, whether the constitutional requirement with respect to uniformity has been complied with in a taxing district, all properties are comparable in constructing the appropriate ratio of assessed value to market value. This is because the uniformity requirement of the Constitution of Pennsylvania has been construed to require that all real estate is a class which is entitled to uniform treatment. *Buhl Foundation v. Bd. of Property Assessment,* supra; *Delaware L. & W. R.R. Tax Assessment (No. 1),* 224 Pa. 240, 73 Atl. 429 (1909). In establishing such ratio in a particular district, the property owner, the taxing authority, and the courts may rely on any relevant evidence.

The evidence supplied by the taxpayer in *Brooks* illustrates one method by which a taxpayer can meet his burden of proving a lack of uniformity, but we do not consider it to be the only method. It would be equally satisfactory to produce evidence regarding the ratios of assessed values to market values as the latter are reflected in actual sales of any other real estate in the taxing district for a reasonable period prior to the assessment date. Thus, for example, the taxpayer's expert witness or witnesses could select a number of recent representative sales and offer testimony with respect to such sales as proof of the ratio in the taxing district. We do not, of course, mean to suggest that the taxpayer must produce evidence with respect

to every recent sale in the district. Furthermore, any other competent evidence of an overall current ratio based on sales within the taxing district which is available may be introduced. We reiterate that the taxing district involved is Allegheny County, and that such evidence, if offered, should be directed to the ratio for that county.

In conclusion, in determining the correctness of the assessment in the present case, the court below must first decide on the basis of the competent, credible, and relevant evidence produced by all parties, what the fair market value of the property involved is. Of course, if the assessment is in excess of that value, it must be reduced. Secondly, the court must determine the appropriate ratio of assessed value to market value which exists in Allegheny County. The court must then apply the ratio thus found to the market value of the property in order to arrive at the proper assessment.

The order of the court below is vacated and the case is remanded for further proceedings consistent with this opinion.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would affirm the Order of the lower Court for the reasons hereinafter set forth.

The property owner took an appeal to the Court of Common Pleas from the Board's assessment. It contended that the assessment exceeded the fair market value of the land, and that it did not comply with the requirements of uniformity.

## Stipulations

The parties had agreed upon the valuation of the building and "[b]y stipulation of counsel, the only issue tried before that court was the valuation of the

land." The parties had also agreed, expressly or impliedly, that the value of the entire property was the total of the value of the building and the value of the land.

The majority holds that *the parties may not, by stipulation or otherwise, even with the approval of the Court,* try only the (value and) assessment of the land (or of the building) and that such a practice is improper and illegal and if the case was tried on such a basis, this Court sua sponte will vacate the Order of the Court below. This new and extraordinary rule was approved or reiterated in the companion cases of *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 243, 209 A. 2d 394; *Casa Loma, Inc. v. Board of Property Assessment,* 417 Pa. 257, 209 A. 2d 387; *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A. 2d 389; and *Rieck Ice Cream Company Appeal,* 417 Pa. 249, 209 A. 2d 383, in all of which, Opinions are being filed simultaneously herewith.

In every field of the law, but especially in the civil fields, Courts for many years have been constantly striving to narrow the issues and expedite a trial by getting the parties to agree, either at trial or at pretrial, on all possible facts and every possible issue, in order to expedite Justice and eliminate or reduce or prevent backlogs. Even in criminal cases, trial Judges favor *the practice* of having both parties agree on as many facts and the elimination of as many issues as is possible, and even a defendant can waive many of his constitutional rights. Thus, the rule enunciated by the majority Opinion flies in the teeth of modern Judicial practice and reform, and has exactly the opposite effect to what is desired by every litigant and every Judge.*

---

* Except a majority of this Court.

I disagree very strongly with much of the basic reasoning and many of the statements in each of the real estate assessment Opinions filed simultaneously herewith and shall discuss all of them in this Opinion.

## A New and Revolutionary Rule

The majority not only outlaws stipulations in this field, but I am convinced revolutionizes, without the slightest justification (and even without any realization), (1) the law and (2) the practices which have existed for decades. The law as to a *separate* assessment (a) for land, and (b) for buildings, has been *statutorily mandated* in Pittsburgh and in Philadelphia, and I am informed that the practices in those Cities have been followed (without statutory mandate) in nearly all the other counties of the State. The majority Opinion in the instant case and also in several of the above mentioned cases (1) states, not only that *the parties cannot stipulate* (a) as to the value of one of the two component parts of a real estate property— i.e., either the land or the building—or (b) that the total value of the property as a unit is the total value of its two component parts; but also (2) requires the property owner to produce before the Board and, on appeal, before the Court of Common Pleas, testimony as to the value of the property as a whole (entity), and (3) *the appeal to the appellate Court must be from the assessment of the entire property.*

At least two recent decisions of this Court have held that the practice of a separate valuation for (a) the land, and (b) buildings was valid and permissible: *Buhl Foundation v. Board of Property Assessment*, 407 Pa. 567, 180 A. 2d 900; *North Park Village, Inc. v. Board of Property Assessment*, 408 Pa. 433, 184 A. 2d 253. See also: *Lehigh & Wilkes-Barre Coal Company's Assessment*, 225 Pa. 272, 277, 74 A. 65.

In *Buhl Foundation v. Board of Property Assessment*, 407 Pa., supra, Justice EAGEN, speaking for a unanimous Court, said (page 569): "This appeal is from an order of the court below sustaining a triennial real estate tax assessment. The property involved is a private housing development in the nineteenth ward of the city of *Pittsburgh*,* known as Chatham Village.

". . . *The assessment appealed from involves only that levied against the buildings; the land assessment is not in litigation.*"

The requirement of the majority in these half dozen real estate assessment cases that in *every* case an appeal from the Board to the Court of Common Pleas and to an appellate Court must be taken from the assessment of the entire property as a unit, flies in the teeth of the Act of March 7, 1901, P. L. 20, as amended, 53 PS §25894, and is contrary to prior decisions of this Court and to a half century of practice. They hold this rule to be applicable even though (1) the taxpayer and the Board agree orally or in writing on the assessment upon all except one of the component parts of the property, or (2) the taxpayer and the Board are completely satisfied with the Board's or the lower Court's assessment of the property in its entirety. In Pittsburgh, for example—where (1) a separate assessment for land and for buildings has been statutorily mandated, and (2) councils were statutorily mandated to determine the annual rate of tax and to assess a tax each year upon the buildings equal to five-tenths of the highest rate of tax required to be assessed for such year on the land, "so that upon the said classes of real estate of said city there shall . . . be two rates of taxation"—the majority Opinion is obviously unsupportable. Analysis will further demonstrate this: Appellant

---

* Italics throughout, ours.

may agree with appellee that *the assessment of the entire property* at $500,000 (or for any other amount) *is proper* but contend that the assessment on the land and on the building, instead of being $250,000 on each, should be $400,000 for the land and $100,000 valuation for the building, thereby resulting in almost doubling appellant's tax. Why, therefore, should the appellant be required to appeal from the total assessment with which he agrees, instead of from that part of the assessment with which he disagrees? The majority do not and cannot explain or justify their decision in this respect. Moreover, doesn't it violate the majority's theory of constitutional uniformity, i.e., that real estate is one indivisible class? Furthermore, if uniformity can be established only by considering the entire property as a unit, is it not unconstitutional to permit the imposition of a tax on land at a specified millage and one-half of said tax on a building which everyone knows is an integral part of the *entire* property?

The majority decision in this and in the companion cases (a) nullifies the applicable law in Pittsburgh and in Philadelphia, and (b) will not only revolutionize the long established practices in real estate assessment cases throughout Pennsylvania, but (c) will make the decision of Common Pleas Judges in real estate assessment cases more burdensome and difficult, and (d) will greatly increase and lengthen litigation, and (e) will increase the burdensome costs of the property owner, and (f) will undoubtedly delay Justice. There is neither reason nor authority for this revolutionary rule or for such a backward step.

### Prima Facie Case

The majority in the instant case further says: " . . . Such presentation makes out a prima facie case for the validity of the assessment in the sense that it

fixes the time when the burden of coming forward with evidence shifts to the taxpayer. . . . But once the taxpayer produces sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary device is ended. Thereafter, such record, of itself, loses the weight previously accorded to it and may not then influence the court's determination of the assessment's correctness. . . ."

This is both incorrect and confusing. It is clearly and undoubtedly contrary to many reported cases and to hundreds and hundreds of unreported cases, and is utterly unsupportable. All the cases hold that the record of assessment, when introduced into evidence, makes out a *prima facie case* which establishes the validity of the assessment, and the assessment must be affirmed in the absence of any credible evidence which is of such weight as to overcome the prima facie case: *Baldwin-Lima-Hamilton Corporation Appeal,* 412 Pa. 299, 194 A. 2d 434; *North Park Village, Inc. v. Board of Property Assessment,* 408 Pa., supra; *Buhl Foundation v. Board of Property Assessment,* 407 Pa., supra; *Brooks Building Tax Assessment Case,* 391 Pa. 94, 137 A. 2d 273; *Hammermill Paper Co. v. Erie,* 372 Pa. 85, 92 A. 2d 422; *Chatfield v. Board of Revision of Taxes,* 346 Pa. 159, 29 A. 2d 685; *Westbury Apartments, Inc., Appeal,* 314 Pa. 130, 170 A. 207; *Washington County v. Marquis,* 233 Pa. 552, 82 A. 756.

## Proof of Lack of Uniformity

Uniformity depends upon the ratio or percentage of assessed value to market value, and assessments are constitutionally required to be uniform. However, I disagree with the statements in the majority Opinion in the instant case and in the *Pittsburgh Miracle Mile*

and in the *Rieck* and in the *McKnight* cases, supra, which hold that the property owner, in order to show lack of uniformity, must prove the market value and the assessed value and the general or common ratio or percentage of assessed value to market value of properties not only in the neighborhood but *throughout the enormous taxing district.* This ignores and nullifies the Act of June 21, 1939, P. L. 626, §7, 72 PS §5452.7, which permits the Board of Property in Counties of the second class to divide the County into three districts, and provide for triennial assessments each year "but for only one of such three districts during any one year."

The proof required of a property owner by the majority is not only contrary to the law and to prior decisions of this Court, but is so impractical and so onerous and burdensome on the property owner as to amount to a denial of Justice: *Brooks Building Tax Assessment Case,* 391 Pa., supra; *Harleigh Realty Co.'s Case,* 299 Pa. 385, 149 A. 653.

I likewise disagree with the majority's mandate that in order to attain uniformity, the assessment *of every property* in every taxing district throughout Pennsylvania must be forthwith increased or reduced by the assessors, even though only a few appeals have been taken in any district: *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa., supra. Cf. also: *Rieck Ice Cream Company Appeal,* 417 Pa., supra. Except in Counties of the second class this is correct in theory, but to review and forthwith reassess hundreds of thousands of properties in a large taxing district is certainly unrealistic and so burdensome on both the assessors and the taxpayer as to be practically impossible: Cf. *Brooks Building Tax Assessment Case,* 391 Pa., supra; *Harleigh Realty Co.'s Case,* 299 Pa., supra.

## Rieck Ice Cream Company Appeal

In *Rieck Ice Cream Company Appeal,* 417 Pa., supra, and in *Heinz Company v. Board of Property Assessment,* the appeal was from the assessment of a building on property situate *in Pittsburgh.* The majority Opinion in each of these cases completely nullifies the statute and the ordinance—the statute* which, we repeat, specifically applies and mandates a separate assessment and (the Ordinance specifically applies and mandates) a different millage for land and for buildings— by (1) ignoring and voiding the Ordinance and (2) by holding that that statute is applicable *only to assessors* and not to a Court of Common Pleas which reviews an assessment de novo on appeal. In other words, the majority Opinion in *Rieck* and *Heinz* and *McKnight* expressly, and the majority Opinion in several of these companion cases impliedly, hold that there is one rule before the Board of Assessment *for determining the value* and assessment of a property and *an entirely different rule* when exactly the *same question* is presented on appeal de novo to the Court of Common Pleas. Such a construction was never the intention of the Legislature; and it flies in the teeth of the statute and is unsupportable.

Furthermore, in *Rieck,* the majority Opinion holds that evidence of the prior assessment was neither res adjudicata *nor one of the factors* which the Board or the Court could consider. Of course it was not res adjudicata; equally certain, it was admissible in evidence as a factor to be considered in the proper valuation and assessment for the triennial period involved in the *Rieck* case.

Moreover, in *Rieck* (and similarly in *McKnight* and *Pittsburgh Miracle Mile*) the majority Opinion says:

---

* Act of March 7, 1901, P. L. 20, as amended, 53 PS §25894, governing Cities of the Second Class.

"The thing from which the property owner appeals and therefore the concern before the court, *is the total assessment of the property as a unit.*" If this is correct, it completely ignores and is *necessarily* contrary to the majority Opinion in the companion case of *Morris v. Board of Property Assessment*, 417 Pa. 192, 209 A. 2d 407.

I likewise disagree with the statements in *Rieck* and in several of the majority Opinions filed simultaneously herewith, that real estate must be valued and assessed as *an indivisible unit or class.* Language can be found in several prior cases to refute this principle. It therefore seems to me erroneous to say that real estate is *one indivisible class* and cannot be divided into one or more kinds or classes of real estate, i.e., land and buildings. Moreover, this theory would require the Court to hold that the Acts supra which require a separate assessment and separate tax for land and for buildings, are Unconstitutional.

## Tax Equalization Board

In *Pittsburgh Miracle Mile,* the majority Opinion states in a footnote that three Judges agree that the figures compiled by the Tax Equalization Board should be admissible in evidence. I disagree, first because the Act, by its language, prohibits it, and secondly, because the figures represent only "sales", and no one knows whether the sales represent a sheriff's or other forced sale, or a sale between a willing buyer and a willing seller, and no party is given an opportunity to challenge the figures or cross-examine any witness, nor is it an admission against interest. How can a property owner overcome that Board's figures which cover an entire County without imposing upon the property owner the unfair burden of presenting evidence which covers the entire County?

## Future Options Too Speculative for Assessment Purposes

In *McKnight,* the majority, speaking through Justice COHEN, holds that an option (for future purchase of the property) contained in a lease,—which option "was not actually executed until the middle of the triennium"—is a proper factor to be considered in determining the value of the property *at the beginning of the triennial period.* In my judgment, for assessment purposes, it is too speculative.

In *Hendel Appeal,* 403 Pa. 635, 170 A. 2d 109, Justice COHEN, speaking for a unanimous Court, said (page 637) : "While a property owner under the Second Class County Code is entitled to have his property carried on the assessment rolls at a valuation which reflects its condition as of December 31 of the preceding year or January 1 of the current year, he cannot require that *his future plans for the building,* except to the extent that they are executed, be reflected in the assessment. Here, the subsequent completion of the intended demolition, even though partially commenced before January 1, and after January 1 expeditiously pursued, cannot affect the value of the building on January 1 . . . ."

For each and all of these reasons, I dissent from the Court's Opinion in this case and would affirm the Order of the lower Court.

Mr. Justice MUSMANNO joins in this Dissenting Opinion.