## Equitable Life & Marriott Corp. v.
## Board of Assessment Appeals

*Henry Reath & Ben Parks* for plaintiffs.
*Bruce J. Eckel,* for defendants.
*Ross Weiss,* for defendants.
*Mark B. Davis,* for defendants.
*Andrew B. Cantor & Arthur Lefkoe,* for defendants.
*William J. Brennan,* for defendants.
*Gregory S. Ghen,* for defendants.
*Parke H. Ulrich,* for defendants.
*Cassin W. Craig,* for defendants.
*Richard F. Faux,* for defendants.
*Mark S. Harris,* for defendants.
*Bernard A. Moore,* for defendants.
*Richard E. Reilly,* for defendants.
*Leo H. Eschbach,* for defendants.
*Roger B. Reynolds, Jr.,* for defendants.
*Philip R. Detwiler,* for defendants.
*Parker H. Wilson,* for defendants.
*Ronald W. Reynier,* for defendants.

*Morris Gerber & Richard S. Watt,* for defendants.
*Larry J. Folmar,* for defendants.
*Charles Potash,* for defendants.
*Marc D. Jonas,* for defendants.
*Albert L. Foster,* for defendants.
*Gilbert P. High, Jr.,* for defendants.
*Kathleen A. Kane,* for defendants.

## ORDER

## SUR: 17 PERCENT UNIFORM COMMON LEVEL RATIO

## INTRODUCTION

DAVENPORT, *J.,* February 23, 1984—Montgomery County is a Second Class A. County and is subject to the provisions of 72 P.S. §5344(a) relating to the assessment of real property for purposes of real estate taxation. Appellants-taxpayer are the owners of commercial and industrial properties in Montgomery County, Pa.

The common issue in all of the consolidated cases is whether the taxpayers' properties were properly and uniformly assessed for taxation purposes. The taxpayers have challenged both the method used by the board in determining their properties' respective assessments and the assessments themselves. The Board of Assessment Appeals and the taxing districts contend that the method used by the board was proper and that the resulting assessments were uniform and lawful.

The method of assessment at issue in this case is one that the board has used since 1978. The method is based upon the market values for all of the properties in the county that were established in connec-

tion with the county-wide reassessment in 1976. These base year figures are then adjusted periodically by the board to reflect current market value data. This adjustment is accomplished by reducing a property's current market value, by a uniform factor of approximately 0.6 percent per month from the date of the current data back to January 1976. A factor of 0.6 percent was selected because it is the inverse of the 10 percent per year inflation factor which prevailed in Montgomery County during the period from January 1976 through January 1982. By this method, the board determines what the market value of a property would have been in 1976 based upon its present market value. This procedure is referred to as "*back-trending*". The uniform 17 percent common level ratio is then applied to this "adjusted" market value. As in all other methods of property assessment, information regarding current market values is either assembled by the board through its review of current sales data as reflected in the county's computer filed land records and other sources, or is brought to the board's attention in connection with an assessment appeal by a taxpayer or a taxing district. The purpose of this is to maintain all properties on a 1976 base year valuation because it is impossible to otherwise value over 200,000 properties annually.

## ISSUE

The common question presented here is whether the method for determining assessed values based on the application of the uniform assessment ratio of 17 percent to adjusted market values is lawful where the adjusted market value is determined by applying a uniform adjustment factor to market values established for the base year 1976.

## PROCEDURAL HISTORY

Marriott Corporation (Marriott) filed a timely appeal in 1976 challenging its real estate assessment for the 1977 tax year on the Marriott Motor Hotel situated on City Line Avenue, Lower Merion Township, Montgomery County, Pa. The local taxing bodies intervened as they were empowered to do by statute.

Subsequent tax appeals were also filed by Marriott and Equitable Life Assurance Society of America (Equitable) who purchased the property in 1978. No appeals were filed by the taxpayers for the tax years 1978 and 1979, however, as a result of an order of the Commonwealth Court* the tax assessment for all years from 1977 through 1983 are also at issue.

The tax appeals are two pronged. They seek (1) a reduction of the uniform common level ratio for the 1981-1982 tax years at issue, and (2) a reduction in the assessments. Taxpayers alleged that the assessments were excessive, contrary to law and specifically that the Montgomery County Board of Assessment Appeals (board) ratio of 17 percent was unjust, improper and lacked uniformity.

By orders of December 2, 1981 and February 9, 1983, all pending tax appeals of this taxpayer and others in which the common level ratio for the years in question was at issue were consolidated by agreement. The proceedings were then *bifurcated* and hearings on *the common level ratio issue* were conducted from March 21, 1983 through March 24, 1983 and the trial on the fair market value and assessment of the Marriott was conducted from May

---

* Marriott Corp. v. Montgomery County, [no. 76-18918 C.P.] no. 1429 C.D. 1980 (January 6, 1982).

23 through June 2, 1983. Closing argument on the valuation hearing was held June 15, 1983.

The decision of the court on the common level ratio is to be applicable to all cases pending which were consolidated, but each appeal pending is to have a separate trial on the question of assessment.

This order pertains only with the trial on the merits of the board's treatment of the common level ratio which is applicable to all cases. A separate order will issue on the motion for reduction of assessment for each party, including the Marriott. In the event of an appeal, the date of the assessment order is to be the beginning date for the appeal period.

## FINDINGS OF FACT

### RATIO

1. The board revalued all properties in Montgomery County effective January 1, 1978 by reference to the base year 1976 to establish dollar values for the properties then on the county's tax rolls. This revaluation was accomplished over five years at a cost of approximately $2,000,000 and involved 197,000 properties.

2. At the time of that revaluation, the board established an assessment ratio to fair market value of 17 percent for all properties in Montgomery County.

3. Since that time, the board has periodically adjusted its figures to reflect current market value data by a method known as *"back-trending"*.

4. In order to maintain the uniformity, the board, through its assessors, collects all the information regarding current market value as reflected in the county's land sales records and applies the deflator of .6 percent in order to establish the adjusted sales value as of January 1, 1976, the base year.

5. The .6 percent factor was selected because it is the inverse of the .9 percent per month inflation factor which prevailed on average in Montgomery County during the period from January 1, 1976 through January 1, 1981.

6. The board applied a uniform 17 percent common level ratio to the market values adjusted to the 1976 base year in determining the assessment of the subject properties for the tax years at issue for all properties.

7. The board refines these determinations by taking into consideration different rates of inflation as these may occur by locality and by type of use, using the locality and land use code set forth in the county records.

8. The board in order to meet statutory requirements pursuant to General County Assessment Law, 72 P.S. §5348 closes the assessment rolls as of March 1 of each year.

9. Both experts retained by the parties to testify as to their opinion of the actual common level ratio in Montgomery County were provided with the same data which consisted of the county assessment rolls for 1980, 1981 and 1982 and the records of all property sales that occurred in the calendar years of 1979, 1980 and 1981.

10. The difference between the board's results and those of plaintiff's expert, Dr. Robert Edelstein, to the extent that any exists, are largely explained by the difference in the data bases that were used, viz: the board closes out its data base as of March 1 of the preceding year, whereas Dr. Edelstein asserts that he used, and the board should use, the data base from January 1 through December 31 of the year preceding the tax year, thus using sales that

occurred a period of 10 months after the assessment rolls are closed.

11. Taxpayer has not proved by a preponderance of the evidence that there was a substantial difference in appreciation in the different strata of real estate and that any difference has caused a lack of uniformity or equalization.

12. Taxpayer's expert admitted that the ratio of assessed value to sales price fell within one statistical standard deviation, which includes more than 65 percent of all sales in the two years considered.

13. It is clear from the testimony of both experts (who agree that there is no substantial difference in their conclusion as to the current ratio between assessed value and market value) that the application of the current ratio of assessed value to market value will yield the same assessment as the board's method of applying the stated ratio to the adjusted market value. The method used by the two experts to arrive at the common level ratio, and the method used by the board trending back to the base year, results in almost identically the same assessment figure for a given property.

14. In the tax year 1981 the ratio of assessed value to sale price on all property was 16.8 percent as determined by the method used by the board of assessment.

15. In the tax year 1982, the ratio of assessed value to sale price on all properties was 17.4 percent as determined by the board's method.

16. Petitioners have failed to establish that an annual reassessment similar to the one which required five years and which is difficult, and prohibitively expensive, would result in greater uniformity of assessments than that which the board of assessment currently uses through back-trending.

17. Although the court found both experts credible, competent witnesses, the methodology of the taxing authority expert, Robert Gustafson is preferable to that of Dr. Edelstein, the taxpayer's expert, because he utilized a data base which was more consistent with the time restriction imposed by statute for annual assessments, i.e., he used data for the year preceding the establishment of assessed values. Additionally, Dr. Edelstein's methodology did not properly exclude non-arms length transactions and vacant land sales which were later assessed on an improved basis.

## DISCUSSION

Taxpayer has argued in support of its position that the taxing authority's methodology is flawed because of the utilization of a method known as back-trending whereby an adjusted market value for a base year is determined by applying a uniform adjusted factor to the current market value. Taxpayer also argued that the methodology was further flawed in that a determination of common level ratio was made by means other than current sales data. Their contention is that the methodology of the taxing authority is unsupported by law, unreliable and lacks uniformity in its application. The court disagrees.

The threshold issue in this case is whether the board's method of determining assessed values is proper. This is a purely legal question, in other words, does the board's use of the back-trending method conflict with the duty imposed on the board by the applicable assessment law, 72 P.S. §5344(a)? That section provides, in part, as follows:

"Assessment, listing, valuation and exemptions for tax purposes . . .

(a) It shall be the duty of said board, in each county to which this act applies, to make and have supervision of the making of annual assessments of persons, properties and occupations now or hereafter made subject to assessments for taxation . . . In making assessments of property at less than actual value, it shall accomplish equalization with other properties within the taxing district . . ." The court finds no conflict between the board's methodology and its statutory obligation to make annual assessments.

Taxpayer asserts that its obligation is to pay no more or no less than its proportionate share of the cost of government. With this proposition, the court agrees. To this extent, taxpayer argues that the subject property should be assessed at actual value as required by the General County Assessment Law (72 P.S. §5341.13) so as to achieve a fair tax assessment. However, as the court in Deitch Co. v. Board of Property Assessment, 417 Pa. 213, 209 A.2d 397 (1965), recognized counties typically assess properties at less than actual value. The taxing authority here does not dispute the fact that properties in Montgomery County are not assessed at actual value. However, in accord with its statutory obligation the taxing authority contends that uniformity is achieved.

Although the literal meaning of the General County Assessment Act requires assessments at actual value, the Pennsylvania Constitution requires uniform tax assessments upon the same class of subjects. As between the standard of actual value and the standard of uniformity, it is the requirement of uniformity that prevails. Buhl Foundation v. Board of Property Assessment, 407 Pa. 567, 180 A.2d 900 (1962). The record of this case demonstrates that the board applied a uniform, fixed ratio

at 17 percent of assessed value to "adjusted" market value throughout the county. This established predetermined ratio is the common level ratio. Deitch Co. v. Board of Property Assessment, supra at 220.

Notably, recent amendments to the General County Assessment Law sanction the use of established predetermined ratios in determining a property's assessed value and increases the methods by which actual value is determined. The use of the back-trending method is such a method approved by the legislature. See 72 P.S. §5342, et seq.

These enactments apply to those appeals brought after January 1, 1983. Therefore, they are not determinative of the issues before the court. Nevertheless, the legislature with the enactment of these bills has given sub silentio guidance to the court as to the validity of the back-trending method. Its sanction of the use of an established predetermined ratio reinforces the court's opinion that the taxpayer's property was properly and uniformly assessed for taxation purposes.

Finally in regard to the ratio issue, the taxpayer asserts that the board's methodology is flawed insofar as an adjusted market value is utilized rather than the most current sales data. However, the record reflects that the board bases its adjusted market value upon information from the 1976 county-wide reassessment and also, upon current market data. The court believes the board's method is proper and finds that it differs from the traditional method only in that the current market values are adjusted downward to a base year value to compensate for inflationary factors. Under this methodology, real estate as a class is valued and taxed uniformly.

## CONCLUSIONS OF LAW

1. Taxpayers failed to carry their burden of proof in establishing that their assessments were not uniform.

2. The county's method of back-trending to 1976 price levels and the application of a uniform predetermined ratio thereto accomplished the statutory and constitutional directives of uniformity.

3. In order to meet the statutory requirements of uniformity and finalization of assessments prior to July 1, the appropriate current market data to establish a common level ratio for a given tax year is the market data for the one-year period ending on such date as the county closes its assessment rolls.

4. The stated common level ratio of 17 percent applied to the sales data defined above, adjusted to 1976 price levels, achieves uniformly.

## ORDER

And now, this February 23, 1984, the court having heard testimony over several days, and arguments of counsel, and further, having reviewed the briefs filed, hereby orders and directs that the common level ratio of assessed value to market value in Montgomery County, Pennsylvania for the tax years 1977 through 1983 inclusive be and the same is established at 17 percent.