631 A.2d 1062

**MONROE COUNTY BOARD OF ASSESSMENT APPEALS, Appellant,**

v.

**Edwina Willetta KARLIN, Appellee.**

**Edwina Willetta KARLIN, Appellant,**

v.

**MONROE COUNTY BOARD OF ASSESSMENT APPEALS, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1989.

Decided Sept. 10, 1993.

Mark S. Love, for appellant, appellee Monroe County Bd. of Assessment Appeals.

Timothy McManus, for appellee, appellant Edwina Willetta Karlin.

Before DOYLE and PALLADINO, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Before us for consideration are cross-appeals from an order of the Court of Common Pleas of Monroe County filed by the Monroe County Board of Assessment Appeals (Board) and by Edwina Willetta Karlin. The Board appeals from that portion of the court's order which directed it to reduce the assessment

of Karlin's property in accordance with the court's *sua sponte* application of the State Tax Equalization Board (STEB) common level ratio (CLR) of ten and four-tenths percent rather than Monroe County's existing predetermined ratio (EPR) of twenty-five percent. Karlin cross-appeals from the court's denial of her uniformity challenge to the valuation procedure employed by the Board, known as "tracking."

■ With regard to the Board's appeal, the sole issue before this Court is whether the common pleas court erred when it *sua sponte* applied the STEB CLR to Karlin's appeal rather than the county's EPR. The Board contends, *inter alia*, that Karlin waived any consideration of the applicable CLR by her failure to plead or raise it at any stage of this case, and that because Karlin's counsel stipulated at the hearing before the common pleas court that the STEB CLR was inapplicable, the court was bound thereby.

In her brief to this Court, Karlin acknowledges that she failed to raise the applicable CLR issue at any stage of the proceedings, and that her counsel did, in fact, stipulate that the STEB CLR was inapplicable. Further, in its opinion the common pleas court acknowledged the stipulation and stated that Karlin "failed to preserve for our review any issue as to the proper ratio to be applied herein." Based on this record, we hold that the applicable ratio issue was waived by Karlin.

We are thus left to decide, however, whether the common pleas court, notwithstanding that waiver, was statutorily required to apply the STEB CLR rather than the County EPR. Aside from the stipulation, the waiver issue in this case is virtually identical to that in *Monroe County Board of Assessment Appeals v. Miller*, 131 Pa. Commonwealth Ct. 538, 570 A.2d 1386 (1990). There, as here, the taxpayer failed to raise the ratio issue. The common pleas court, believing that it had an affirmative statutory duty to do so, *sua sponte* addressed that issue and applied the STEB CLR rather than the County EPR. We held in *Miller* that it was error for the court to address *sua sponte* the ratio issue where that issue had been

waived and it was not necessary to the resolution of the case.[1] Here, the waiver is even more compelling in light of the stipulation that the STEB CLR was not an issue. Therefore, we deem *Miller* to be controlling and accordingly reverse the order of the common pleas court on this issue. *See also, Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

We now turn to Karlin's cross-appeal, the genesis of which was a county-wide reassessment effective with the 1989 tax year. Karlin owns an improved 33.85 acre parcel in Smithfield Township, Monroe County, which was assessed as having a total actual value[2] of $152,319.00. An acreage factor of .45 was used to calculate the actual value of the land component of the property which was the standard factor generally applied by the Board in the reassessment of that component. Karlin's lot is designated "Lot 1" on a subdivision plan of the lands of the Estate of Florance L. Carter. Shawnee Mountain, Inc. (Shawnee), owns the lots designated as "Lot 2" and "Lot 3" on the Carter subdivision plan. The Shawnee lots and Karlin's lot are for the most part similar, although the Shawnee lots are totally unimproved whereas Karlin's property is improved with a single family home and garage. However, due to the use of "tracking" as a valuation method, the actual value of the Shawnee property was determined by using an acreage factor of .18 rather than the .45 factor used on Karlin's property for her land component. All of the Shawnee property is classified

1. Section 704(d) of The Fourth to Eighth Class County Assessment Law (Law), Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. § 5453.-704(d) provides: "Nothing herein shall prevent any appellant from appealing any base year valuation without reference to ratio." It was this specific provision in the Law which led the Court in *Miller* to conclude that the CLR could be waived and that it was not required that the court automatically use it.

2. The term "actual value" is used here as that is the term which is set forth in Section 602 of the Law, 72 P.S. § 5453.602. "The term 'actual value' means 'market value' ... and market value has been defined as the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Brooks Building Tax Assessment Case,* 391 Pa. 94, 97, 137 A.2d 273 (1958) (citations omitted).

as "land," of course, because it is totally unimproved. Before the common pleas court, Karlin contended, *inter alia*, that the use of the two different acreage factors violated the uniformity provisions of the Pennsylvania Constitution.

Following a hearing, the court denied Karlin's appeal, and concluded that although "the tracking process ... appears to be a questionable method of valuation," the issue was not squarely before it, and held that Karlin neither specifically attacked tracking nor did she present sufficient facts to enable the court to determine its validity. The court further held that Karlin failed to satisfy her burden of proof on the uniformity issue within the guidelines established by case law, and that it was thus unable to reach that issue.

Before this Court, Karlin contends (1) that the validity of the tracking process was before the common pleas court, (2) that tracking is not a valid method of property valuation for tax assessment purposes, (3) that she met her evidentiary burden, and (4) that the principle of uniformity of taxation requires that the actual value of her property be calculated utilizing the .18 acreage factor so as to be uniform with the method of calculating the actual value of adjoining similarly situated properties.

With regard to whether the tracking issue was before the common pleas court, the court apparently concluded that it was not because of Karlin's failure to use the specific term "tracking" in her notice of appeal. However, it appears that tracking is not a term of art, but is instead the name given by the Board, (or by the independent valuation service employed by the Board to do the reassessment), to the particular valuation process used in the reassessment, and neither the Board nor Karlin have pointed to any use of the term in relevant authorities. In her notice of appeal to the common pleas court, Karlin explained the alleged improper valuation procedure and asserted that it violated constitutional uniformity requirements. She also requested that the court reduce her assessment so that it was uniform with the Shawnee lots. We note further that substantial testimony at the hearing was

devoted to the tracking process and that the Board was not unaware of the tenor of Karlin's appeal. Finally, the Board, in its reply brief to this Court and again at oral argument, advised us that Karlin did indeed raise the tracking issue before the common pleas court. For these reasons, we hold that Karlin's notice of appeal addressed the tracking issue with sufficient specificity to put the common pleas court on notice that she was attacking the Board's use of tracking in valuing her property, and that the issue was therefore properly raised below.

Having decided that the tracking issue was properly before the common pleas court, we now turn to the validity of "tracking" as a method of property valuation for tax assessment purposes. As found by the common pleas court one of the reasons for the disparity in the ultimate assessment of Karlin's property and the Shawnee property was the use of tracking to value the Shawnee land and not the Karlin land. Under the reassessment process, a base rate value for each acre of land was first established. An acreage factor was then applied to the base rate value, and the resulting value was then multiplied by a percentage factor which was used to adjust the value of the property for any unusual topographical conditions unique to that property. Finally, the resulting value, which was the actual or fair market value,[3] was multiplied by the county EPR to arrive at the assessed value for the property.

It is in the application of the acreage factor to the base rate value of the land component where tracking enters the formula. As found by the common pleas court, tracking combines contiguous, separately deeded lots owned by the same property owner and treats them for valuation purposes as though they were not separately deeded lots, but instead one large parcel of land. The combined parcel is then valued as if it would be sold as one entire tract as opposed to its component lots, the effect being to reduce the per acre value. This value is used in determining the acreage factor, which is then applied to the base rate value in order to determine the actual

3. *See* note 2 *supra*.

value of each individual lot. As noted *supra,* an acreage factor of .45 was used in determining the actual value of Karlin's land, *i.e.,* forty-five percent of the base rate value was reflected in the actual value. For the Shawnee land, the Board used an acreage factor of .18, with the result that only eighteen percent of the base rate value was reflected in the actual value.

Article 8, Section 1 of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." That this principle underlies real estate taxation in the Commonwealth is further illustrated by Section 602(a) of the Law, 72 P.S. § 5453.602(a) which provides in pertinent part:

**Valuation of persons and property**

(a) It shall be the duty of the chief assessor to rate and value all subjects and objects of local taxation, whether for county, township, town, school (except in cities), county institution district, poor or borough purposes, according to the actual value thereof. . . . In arriving at actual value the county may utilize the current market value or it may adopt a base year market value. In arriving at such value, the price at which any property may actually have been sold either in the base year or in the current taxable year shall be considered, but shall not be controlling. Instead, such selling price estimated or actual shall be subject to revision by increase or decrease *to accomplish equalization with other similar property within the county.* In arriving at the actual value, all three methods: namely, cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence), comparable sales and all income approaches, must be considered in conjunction with one another. (Emphasis added.)

██ Our Supreme Court has held that in order to comply with the constitutional mandate, taxes must be applied uniformly upon similar kinds of property, with substantial equality of the tax burden to all members of the same class. *Brooks.* In this manner no taxpayer should pay more or less

than his or her proportionate share of the cost of government. *Deitch Co. v. Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965). Further, any system which results in the intentional undervaluing of like or similar properties is impermissible. *Brooks.* In the instant case, there would appear to be a facial disparity in the tax burden on similar adjoining lands which is due to the use of tracking on the Shawnee properties and not on Karlin's property.

■ Upon clearer focus, however, and what Karlin overlooks, in her argument is that the acreage factor applied in the reassessment process was only one of several "factors" used to determine the actual value of property undergoing reassessment. A reference to the tax assessment record card for the Karlin property (Exhibit 1 in the record) clearly reflects this. There were three categories of property on the card, viz., "land," "garage," and "structure," but only the appraisal of property under the "land" category is contested in this appeal. The card reflects the methodology used for establishing the fair market value of the land as follows: [4]

| Land | Base Rate | Acreage Factor | Topo. Adj'mt. | Adj. Rate Per Unit | Unit Size | Actual Value |
|------|-----------|----------------|---------------|---------------------|-----------|--------------|
| Home site | $21,000 | | | $21,000 | 1 Acre | $ 21,000 |
| Road frontage | $21,000 | .45 | .75 | $ 7,088 | 5.15 A | $ 36,000 |
| Rear land | $ 8,400 | .45 | .75 | $ 2,835 | 27.35 A | $ 77,537 |
| | | | | **Total Land Value** | | $135,040 |

What is illustrated by this exhibit is that not only was an

---

**4.** Exhibit 1 shows that Karlin's entire 33.85 acre tract was valued at $152,319 for tax purposes. To the land value of $135,040 shown above was added the value of the garage ($2,297) and the value of the house ($14,982). Some of the "factors" used in appraising the house were, *inter alia,* its size, foundation "base rate", and depreciation. The garage evaluation used "factors" such as "base rate" and condition. In any event, the card shows that different factors were applied to different types of property, and even to different components of the same property within each type. For instance, the square foot area of the two porches attached to the house are subject to two different percentage factors but both were subject to a reduction factor of 30% for depreciation.

acreage factor used in the appraisal of the land component, but a "topographical adjustment" factor was also applied (.75) to Karlin's property which reflects an adjustment downward for an unusual or difficult topography. The topography factor was not employed, of course, in appraising the land under Karlin's "home site" consisting of one acre.[5] A reference to the assessment record cards for the Shawnee land (Exhibit 3 in the record)[6] illustrates the use of different factors employed in the methodology. Shawnee's records reveal that its property was totally unimproved and thus all of it was under the "land" category, and the entire tract, consisting of 67.08 acres was, classified as "commercial rear" land, a subclassification different from Karlin's three types of land classification, viz., "home site," "road footage," and "rear land." The Shawnee cards show the following:

| Land | Base Rate | Acreage Factor | Other Adj. | Adj. Rate Per Unit | Unit Size | Actual Value |
|---|---|---|---|---|---|---|
| Lot 3 Com. Rear | $10,800 | .18 | | $1944 | 33.59 | $ 65,299 |
| Lot 2 Com. Rear | $10,800 | .18 | | $1944 | 33.49 | $ 65,105 |
| | | | | **Total Value** | | $130,404 |

What can be gleaned then by comparing the two records is that not only was Karlin's "rear land" given a base rate $2,400 per acre *less* than Shawnee's "commercial rear" land, but a reduction factor of .75 was further applied to the Karlin land as a topographical adjustment which was not applied to the Shawnee land. Karlin, therefore, has picked out the one factor that resulted in a *higher* appraised value to assert that the entire methodology used in the reassessment failed to meet the constitutional mandate for uniformity, while ignoring the two other factors which gave her a *lower* appraised value for her land. At no time, however, does Karlin ever attack,

**5.** The home itself was appraised separately. *See* note 4 *supra.*

**6.** There were actually two tax assessment record cards for the Shawnee tract because Shawnee owned two "lots" in the subdivision.

much less establish, that the underlying reasons for employing any of these factors was flawed for appraisal purposes.

What Karlin argues, in essence, is that the methodology employed by the Board to establish the fair market value of contiguous tracts of similar, but not identical land, is unconstitutional simply because identical factors are not used, without ever establishing, much less allowing for, a rational basis for the disparity. And, the fact is that these tracts, although similar, were not identical. As the chief assessor for Monroe County explained, "tracking presupposes that a large unimproved parcel of land can be marketed for a value per acre which would be lower per acre than a small unimproved parcel of land." This explanation was never challenged by Karlin, and when consideration is given to the fact that Shawnee's 67.08 acres adjoins Shawnee's "residual land encompassing a total of 614.73 acres," the use of an acreage factor may not be considered totally irrational, especially since it was only one of several factors taken into account by the expert appraisers to determine the fair market value of similar, but not identical, tracts of land.

■ Karlin, moreover, failed to meet her evidentiary burden. In *Deitch*, the Supreme Court outlined the respective burden of the parties before the common pleas court in a tax assessment appeal as follows:

> The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary device is ended. Thereafter, such record, of itself, loses the weight previously accorded to it and may not then influence the court's determination of the assessment's correctness. Of course, the taxpayer still carries the

burden of persuading the court of the merits of his appeal, but that burden is not increased by the presence of the assessment record in evidence.

417 Pa. at 221–22, 209 A.2d at 402 (footnote and citations omitted).

Here, the common pleas court, relying on this Court's decision in *Albarano v. Board of Assessment and Revision of Taxes and Appeals,* 90 Pa. Commonwealth Ct. 89, 494 A.2d 47 (1985), held that Karlin did not meet her evidentiary burden in that she did not provide sufficient evidence regarding the fair market value of her lot or of the Shawnee lots. In *Albarano,* the taxpayers attempted to challenge the uniformity of their assessments before the common pleas court by presenting evidence of *assessments* of properties comparable with theirs, rather than evidence as to market value. The court determined that, in the context of a statutory appeal, it could not consider assessments of comparable properties and, when the taxpayers failed to produce evidence as to market value, dismissed their appeal with prejudice. On appeal, this Court held that the common pleas court erred when it concluded that it could not entertain a uniformity challenge under Section 704 of the Law, 72 P.S. § 5453.704, and consider assessments of comparable properties. However, we concluded that the taxpayers still did not meet their burden of proof because without evidence to show that the actual value of comparable properties was different than that found by the Board, the common pleas court had no information to make a finding as to the current market value and apply the EPR to determine the issue of uniformity.[7]

Here, before the common pleas court, the Board established a prima facie case for the validity of its assessment by placing its assessment record into evidence. Karlin then submitted as

7. Succinctly stated, the holding in *Albarano* is that while a property owner may establish a prima facie rebuttal case to the taxing authority's prima facie case in chief under *Deitch,* by showing disparate *assessments,* "the taxpayer still carries the burden of persuading the court of the merits of his appeal." *Id.* 417 Pa. at 222, 209 A.2d at 402, and the production of evidence establishing *the fair market value* of the comparable properties is still required.

evidence the assessment cards for her lot and the Shawnee lots, a map of the subdivision from which the three lots were drawn, and testimony regarding the physical characteristics of the three lots. She did not submit evidence as to the fair market value of any of the three lots and, based on *Albarano*, the common pleas court found that Karlin failed to satisfy her burden of proof. We believe that the common pleas court's reliance on *Albarano* was sound, and conclude, as did the trial court, that Karlin failed to sustain her burden under *Deitch.*

Having concluded that Karlin failed to establish the invalidity of tracking as a method of valuation for assessment purposes, and that Karlin has also failed to meet her evidentiary burden, we affirm the judgment of the common pleas court in the Karlin cross-appeal.

Reversed and remanded for a recomputation of the taxes on the Karlin property using Monroe County's predetermined ratio of twenty-five percent of actual value to obtain the assessed value.

## *ORDER*

NOW, September 10, 1993, the appeal filed by the Monroe County Board of Assessment Appeals, docketed at No. 1325 C.D.1989, is sustained and the order of the Court of Common Pleas of Monroe County is reversed with respect thereto and the matter remanded to the Common Pleas Court for proceedings consistent with this opinion.

With respect to the appeal of Edwina Willetta Karlin, docketed at No. 1428 C.D.1989, the same is denied and the order of the Court of Common Pleas of Monroe County with respect thereto is affirmed.

Jurisdiction relinquished.

This case was originally argued before a panel consisting of Judge DOYLE, Judge PALLADINO and Senior Judge BARBIERI. Because of the untimely death of Senior Judge BARBIERI, the case was submitted to Senior Judge LORD as a member of the panel.