David Feist and Dolores Feist, his wife, Myrtle Singley and Margareta Hagstrand, Appellants, *v.* Luzerne County Board of Assessment Appeals, Appellee.

Argued October 8, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS and

BLATT. Judges KRAMER and WILKINSON, JR. did not participate.

*Philip F. Hudock,* with him *Robert P. Hudock,* for appellants.

*Richard S. Kempes,* with him *Joseph A. Quinn, Jr.* and *Hourigan, Kluger & Spohrer Associates,* for appellee.

OPINION BY JUDGE MENCER, December 4, 1975:

This appeal is from an order of the Court of Common Pleas of Luzerne County relative to the 1972 tax assessment of three properties situate in Luzerne County. We have carefully examined the 2,936-page record in this case and conclude that the order of the trial court should be affirmed. Judge BIGELOW has ably presented the essential facts and law in his opinion for the trial court; therefore, we affirm the trial court's order on Judge BIGELOW'S opinion, the pertinent portions of which follow:

"FINDINGS OF FACT

"1. The 1971 assessed valuation of the property owned and occupied by David Feist and Dolores Feist, his wife, appellants herein, located in Dipple Manor, Sugarloaf Township, Luzerne County, was fixed at $4,710

by the Luzerne County Board for the Assessment and Revision of Taxes, of which $1,840 was the assessment applied to the land, a parcel averaging 32 feet x 324 feet, and $2,780 was the assessment applied to the residence thereon, a one and one-half story stucco dwelling, 25 feet x 35 feet.

"2. By action of the Board for the Assessment and Revision of Taxes on August 12, 1971, the assessed valuation of this property for 1972 was raised from $4,710 to $10,060, of which the entire increase ($5,350) was applied to the assessment of the residence, the land assessment remaining the same.

"3. The notice advising the owners of this increase stated that the reason for the increase was a change in market value. The Plate Number of the property of David Feist and Dolores Feist is 58-85-1-D15.

"4. The owners appealed this increase to the Board which, after hearing, revised the residence assessment downward by $2,010, left the land assessment unchanged at $1,840, with the result that the revised assessment for the year 1972 was fixed at:

| | |
|---|---|
| Land: | $1,840 |
| Buildings: | 6,210 |
| TOTAL: | $8,050 |

"5. The revised assessment was appealed to this court, and hearings thereon and the other two (2) appeals herein considered were held May 30, 31, July 24, 25, 26, August 28, 29, September 1, 5, 6, 7, 8, 11, 12, 13, 14, 21, 22, October 2, 11, 31, November 1, 2, 9, 1972.

"6. The 1971 assessed valuation of the property owned and occupied by Myrtle Singley, appellant herein, located at 383 Main Street in the Borough of Conyngham, Luzerne County, was fixed by the Board for the Assessment and Revision of Taxes at $3,770, of which $1,020 was the assessment applied to the land, and $2,750 was the assessment applied to the building thereon.

"7. By action of the Board for the Assessment and Revision of Taxes on August 12, 1971, the assessed valuation of this property for 1972 was raised from $3,770 to $5,050, of which the entire increase ($1,280) was applied to the assessment of the residence, the land assessment remaining the same.

"8. The notice advising the owner of this increase stated that the reason for the increase was a change in market value. The Plate Number of the property of Myrtle Singley is 8-209.

"9. The owner appealed this increase to the Board which, after hearing, denied the appeal.

"10. The assessment for 1972, namely,

| | |
|---|---|
| Land: | $1,020 |
| Buildings: | 4,030 |
| TOTAL: | $5,050 |

was appealed to this Court and hearings on this appeal and the other two (2) appeals were held on the dates set forth in Finding of Fact No. 5.

"11. The 1971 assessed valuation of the property owned and occupied by Margareta Hagstrand, appellant herein, located in Sugarloaf Township, Luzerne County, was fixed at $3,060 by the Luzerne County Board for the Assessment and Revision of Taxes, of which $330 was the assessment applied to the land, and $2,730 was the assessment applied to the residence thereon.

"12. By action of the Board for the Assessment and Revision of Taxes on August 12, 1971, the assessed valuation of this property for 1972 was raised from $3,060 to $7,850, of which the entire increase ($4,790) was applied to the assessment of the residence, the land assessment remaining the same.

"13. The notice advising the owner of this increase stated that the reason for the increase was a change in market value. The Plate Number of the property of Margareta Hagstrand is 58-365-D15.

"14. The owner appealed this increase to the Board which, after hearing, denied the appeal.

"15. The assessment for 1972, namely,

| | |
|---|---|
| Land: | $ 330 |
| Building: | 7,520 |
| TOTAL: | $7,850 |

was appealed to this Court and hearings on this appeal and the other two (2) appeals were held on the dates set forth in Finding of Fact No. 5.

"16. The fair market value of the Feist real estate as of August 31, 1971, was $18,600.

"17. The fair market value of the Singley real estate as of August 31, 1971, was $11,600.

"18. The fair market value of the Hagstrand real estate as of August 31, 1971, was $20,000.

"19. In determining assessed valuation of real estate the Luzerne County Board for the Assessment and Revision of Taxes applies a thirty-five percent (35%) ratio to fair market value as fixed by the Board and this ratio is applied uniformly to such determinations of fair market value throughout Luzerne County.

"20. For the year 1972 there were 117,977 parcels of real estate assessed for tax purposes. Of this total, 4,681 parcels were assessed at higher or lower assessments for 1972 than for 1971.

"21. In Conyngham Borough for 1972 there were 583 properties carried on the assessment records; of these, 484, (81.5%) were reassessed for the year 1972. In Sugarloaf Township, of 978 properties on the assessment records, 504 (51.5%) were reassessed, i.e. the 1971 assessment was changed for 1972. Excluding these two municipalities only 3.17% of the properties in the County were reassessed. With the exception of new construction, all assessment changes in these two municipalities were residential properties, mainly single-family dwellings.

"22. The vastly disproportionate number of assessment changes in Sugarloaf Township and Conyngham

Borough, as contrasted with those occurring in other municipalities in Luzerne County for 1972 were the result of direct instructions to Herbert Craze and George Walko, field investigators in the County Assessor's Office by Thomas Garrity, Chief Clerk and Director of the County Assessors' Office, which in turn resulted from Mr. Garrity's conclusions, based upon continuing studies made by him, that in these two municipalities the assessments were 'running behind' fair market value of the properties and exceeded a 14% permissible deviation.

"23. The 'continuing studies' made by Mr. Garrity and his staff, routinely and for all areas of the County, involved comparisons of current assessments of properties with selling prices for said properties set forth in deeds or reflected by revenue stamps when deeds of sales of these properties were recorded and copies received in the Assessor's office.

"24. When these studies indicated a pattern of variation of more than 14% between assessed valuation and what assessed valuation would be if based upon the 35% ratio and sales prices of properties in an area, Mr. Garrity personally would view the properties in the area, and on his instructions members of the assessing staff would make block checks (by exterior views) in the area, check photographs, check for changes in the data appearing on the master file cards and thereafter a consensus of market value would be arrived at by Mr. Garrity and other staff members to which value would be applied the 35% ratio to arrive at the new assessment.

"25. These studies were not used to revalue properties, nor was the information obtained during these studies considered in determining fair market value of the properties in the area involved, in fact these were discarded.

"26. During the 1972 assessment process, in addition to the high number of properties for which changes in 1971 assessments were made in Sugarloaf Township

and Conyngham Borough for 1972, other areas in which intensive assessment activity was carried on for 1972 as the result of the continuing studies included areas of Wilkes-Barre, Plains and Hanover Townships and Laflin Borough.

"27. During the 1972 assessment process each assessed property in Luzerne County was viewed by the sub-assessor assigned, improvements already assessed externally, new additions and construction externally and internally.

## "DISCUSSION

"Despite the exceptionally large number of days devoted to hearing testimony in these appeals and the resultant high volume of oral testimony (the hearing judge's handwritten notes total 118 pages) this series of hearings was concerned basically with two (2) issues as to each of the three (3) properties, namely what the proper market valuation and assessed valuation of said properly should be for the year 1972. Rieck Ice Cream Company Appeal, 417 Pa. 249, 254. The resolution of these issues requires two (2) determinations; first, the determination of the correct fair market value of the property; second, if assessed valuation is to be a percentage of market value, the application of a uniform ratio to all properties in the taxing district. Massachusetts Mutual Life Insurance Company Tax Assessment Case, 426 Pa. 566.

"As to the determination of the fair market value of the three (3) subject properties, the hearing judge places greater credence in the testimony of the real estate experts testifying on behalf of the appellants-owners, as it is clear that their inspections of the subject properties were in much greater detail than that of the county assessor's personnel who admittedly had made no interior inspections for a number of years but had relied on unchanged status on a property inventory prepared in 1957,

and determined fair market value without really knowing whether or not any changes had occurred in the interiors. In this connection, it must be noted that the Hagstrand land was bought in 1949 and the house erected thereon was constructed by the Hagstrand family in 1951, that the Feist land was purchased and the home erected by a Mr. Dipple and Mr. Feist during 1951, and that the Singley home is an old home constructed somewhere around 1895, is old-fashioned and obsolete.

"As to the determination and application of the ratio of 35% by the assessor, as noted in Finding of Fact No. 19, this was the essence of the testimony of the witness in charge of this function, Mr. Garrity, the Chief Clerk to and Director of the Board of Assessment Appeals. The point of dispute is appellants' claim that this ratio should not be applied to their properties because, while arithmetically it is applied to a figure called fair market value of each property in the County, in fact the fair market value figure is not and cannot be accurate and therefore ratio or ratios other than 35% of necessity is what is applied to the actual fair market value. In this connection, it must be noted that there are approximately 117,977 pieces of real estate separately assessed for the year 1972, here the year in question.

"By statute, it is directed that:

'In the case of real property, the court shall determine, from the evidence submitted at the hearing, what ratio of assessed value to actual value was used generally in the taxing district, and the court shall direct the application of the ratio so found to the value of the property which is the subject matter of the appeal, and such shall be the assessment.' 1971, June 3, P. L. ——, No. 6, §1, 72 P.S. §5350(a).

"If the issue being tried is lack of uniformity, as here, the appealing taxpayer may sustain his burden of proof by a showing that a lower ratio of assessment to actual value has been applied to similar properties: i.e., if the

lack of uniformity in a golf course assessment is the issue, appellant may prove the assessments of other golf courses in the county and may, if relevant, prove that the actual value of other golf courses is different from that determined by the assessors. Valley Forge Golf Club, Inc. Tax Appeal, 3 Pa. Commonwealth Ct. 644, 650. Where, however, the assessors have applied a fixed ratio of assessed to actual value throughout the district, the owner is entitled to have this ratio applied to the actual value of his property. Valley Forge Golf Club, Inc. Tax Appeal, supra, p. 649.

"For the purpose of deciding proper assessments on appeal, the constitutional uniformity requirement mandates that the assessment of a particular appellant shall reflect an assessment at not more than the 'common level' of assessments prevailing in the district as a whole, Rick Appeal, 402 Pa. 209, the appellate court observing that a taxpayer is not entitled to be assessed at the lowest ratio he can point to if in fact that lowest ratio does not reflect the common assessment level in the district. By the term 'common level' is meant the fixed ratio of assessed to market value 'where the evidence shows that the assessors have applied a fixed ratio . . .' and 'where the evidence indicates that no such fixed ratio has been applied, and that ratios vary widely in the district, the average of such ratios may be considered the "common level" '. Deitch Company v. Board of Property Assessment, 417 Pa. 213, 220. In Finding of Fact No. 19, the hearing judge has concluded that the Board applies a 35% ratio to fair market value as determined by the Board to calculate assessed value. This has been the testimony of the witness Garrity, the Director of the Assessors Office, and assessor's records show that this ratio was applied to the fair market values of the three (3) subject properties to arrive at the assessed valuations from which appeals to the Board of Assessment Appeals were taken, i.e.:

|  | Fair Market Value | Assessed Value | Ratio |
|---|---|---|---|
| Hagstrand: | $22,440 | $ 7,850 | 35% |
| Singley: | 14,412 | 5,050 | 35% |
| Feist: | 28,750 | 10,060 | 35% |

"Much of the testimony offered by appellants' experts, i.e., two (2) real estate brokers (Mr. Poggi and Mr. Bell) and a professor of mathematics at Wilkes College (Dr. John S. Wasileski) is concerned in depth with two (2) propositions: (1) in the case of the two (2) real estate brokers, that in the case of six (6) properties located in the general geopraphic area as the three (3) subject properties, adjusting fair market value as determined by the Assessor's Office to Mr. Bell's and Mr. Poggi's determinations of fair market value for each of these six (6) properties, then applying assessed value to these opinions, the ratios would be as follows:

| Name | Land & Buildings | Poggi & Bell Fair Market Value Estimate | Assessment | Ratio |
|---|---|---|---|---|
| Wyndgate, Inc. Sugarloaf Township | 94.8 acres House, Barn | $74,000 (land at $600 per acre) (1969 deed price $60,000) | $5560 | 7.5% |
| E. C. Wideman Sugarloaf & Black Creek Townships | 388 acres No buildings | $48,500 (at $125 per acre) | $2250 (land only) | 4.8% |
| Harold & Lorraine Benjamin Sugarloaf Township | 63.81 acres No buildings | $25,500 (at $400 per acre) | $1100 (land only) | 4.0% |

| Name | Land & Buildings | Poggi & Bell Fair Market Value Estimate | Assessment | Ratio |
|------|------------------|------------------------------------------|------------|-------|
| Warren & Mildred Zehner Black Creek Township | 125 acres House, Barn | $31,000 (land only, at $250 per acre) | $1270 (land only) | 4.1% |
| Warren Zehner Black Creek Township | 75½ acres No buildings | $9000 (at $125 per acre) | $1021 (land only | 11.3% |
| Frank Walser Sugarloaf Township | 61.68 acres House, Stable Garage | $92,500 (at $1500 per acre) | $1650 (land only) | 1.8% |

"Mr. Poggi further testified that a study conducted by him of ninety-one (91) properties located in twenty (20) municipalities in this County, each of which was sold through his office in 1971, indicated to him that the assessed value of these properties at the time of sale averaged twenty-two percent (22%) of fair market value which in turn was the price recited in the deed where this price and the actual price paid were identical and where they were not identical he selected the actual price paid as shown by his records as the fair market value. Mr. Bell testified that he ran a study of eighty-five (85) real estate sales made through his firm in 1971, and selected forty-two (42) of these, located in eighteen (18) communities, for the purpose of computing the ratio of assessed value to fair market value, and on the basis of his study concluded that the unweighted arithmetic average ratio was twenty percent (20%). He further testified that he used actual sales price as fair market value and did not use the prices recited in the deeds or revenue stamps attached to the deeds as these in many cases are not the actual prices paid. In this connection, the parties involved should consult the provisions of the

Act of 1951, December 27, P. L. 1742, as amended (72 P.S. §3283 et seq.). It is somewhat startling, even in these days of what is called permissiveness, to listen to court proceedings in which the reliance of the assessor's office on real estate prices recited in deeds or on revenue stamps attached to deeds is criticized on the basis that these items required by law to be accurate, do not reflect what the law requires, as evidenced by appellants' witnesses' testimony that the correct information is contained in their files and not in the deeds.

"It is the conclusion of the hearing judge that Mr. Garrity's testimony that his office applies a 35% ratio to fair market value as determined by his office to arrive at assessed value is correct and true and that this ratio is the ratio commonly applied in the county to fair market value as determined by the assessor for that purpose.

. . . .

"The second major thesis of appellants' experts is that the conclusion of Mr. Garrity to examine single family residence assessments in Sugarloaf Township and Conyngham Borough is predicated upon a mathematically invalid procedure and therefore this conclusion and the resulting changes of assessments in this class of property in these municipalities is arbitrary, capricious and unconstitutional.

. . . .

"The pleadings, evidence and argument extend to issues beyond the establishment by the Court of the fair market value of each of these three properties and the application of the 35% generally used ratio to these values resulting in the assessment for each of these properties for the year 1972.

"The point of contact between the divergent positions of the Luzerne County Board of Assessment Appeals on the one hand and the four Petitioners on the other hand is the scope of judicial relief available to Petitioners, the

position of counsel for Petitioners being that it is within the authority of this Court to set aside the entire 1972 County Assessment of Real Property at least as to all affected properties in Sugarloaf Township and Conyngham Borough, by reason of the successful challenge by Petitioners to 'virtually every phase of the procedure followed by the Luzerne County Assessor in assessing properties for the year 1972' (Petitioner's Argument Brief, p. 6) and the position of the Assessor being that the 'limits of judicial action at the Common Pleas level' (Respondent Brief, p. 4), are the determination of fair market value and the application of the generally used taxing ratio to that value.

. . . .

"The Court has examined the specific complaints of appellants and has concluded that the assessor has not failed to comply with the statutory requirements as to the annual assessment or the view of the properties and that a 35% ratio was generally and uniformly applied by the assessors throughout Luzerne County to fair market value estimates as determined by the assessor to calculate assessed value. The Court thus does not agree with appellants' contention that the 1972 assessment involved an illegal partial assessment. To the contrary, this Court has determined in these appeals that the assessor legally conducted the 1972 assessment although in error in varying degree as to the determination of fair market value as to the three subject properties, said errors having been corrected by this Court in determining, on appeal, the 1972 assessments of these three properties.

. . . .

"In summary, the difficulty with the assessment program is not with the adopted and applied 35% ratio but is with divergent views as to market value which have been resolved as to the three subject properties by this appeal.

. . . .

"In his Conclusion to Petitioners' Argument Brief, Petitioners' counsel asks on behalf of the Petitioners herein: that the fair market value of the Feist property for 1972 tax purposes be fixed at $18,600 (the Court has so found, see Finding of Fact No. 16): that the fair market value of the Hagstrand property for 1972 tax purposes be fixed at $20,000 (the Court has so found, see Finding of Fact No. 18: that the fair market value of the Singley property for 1972 tax purposes be fixed at $11,600 (the Court has so found, see Finding of Fact No. 17).

. . . .

"As counsel for Petitioners-Appellants points out in his brief, the statutory provision in the County Assessment Law is rather general with respect to costs and expenses of a hearing. The applicable portion of the statute (72 P.S. §5020-518.1) merely states:

'. . . the costs of the appeal and hearing to be apportioned or paid as the Court may direct: . . .'

"While counsel urges the Court to hold that all fees and costs should be assessed upon the County, there is no clear authority mandating such an award. Essentially the determination is one to be made by the Court in its discretion, and while it is commonplace to impose record costs on the unsuccessful party it is not so as to the other expenses of litigation.

"It is correct that the awarding of costs is a matter which may be considered to be within the equitable powers of the Court. However, the complete imposition of all expenses as requested by Appellant's counsel is only done under the rarest of circumstances.

"Appellant's Counsel cites La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D. Cal. 1972) as authority for the various exceptions under which counsel fees and witness fees may be awarded to a successful appellant or plaintiff. The La Raza Unida case involved a class action brought by residents of a low income housing project to enjoin

the construction of a federally financed highway project which would not only cause the elimination of the residential area, but the destruction of a neighboring park as well. The resident plaintiffs in the case were successful in all respects and the Court awarded expenses of the litigation to them.

"In that decision the Court discussed the three theories upon which awards of this nature have been made. First is the 'common fund' exception, where as a result of the litigation a fund is created to the benefit of the class of plaintiffs involved. In order to mitigate the inequity of many benefiting from the efforts of only a few of their class the Courts have allowed the assessment of attorneys' and witness' fees against the fund, rather than to see the representative parties bear such costs. It does not appear that this exception is applicable here.

"A second theory, an exception, is the 'obdurate behavior' exception. This rule has its application in instances where the defendants have acted in bad faith. It can be seen to apply in instances where a party defendant with great resources, but not much law, on his side determines to protract ligitation merely on the theory that he can wear his opponent to complete financial exhaustion. The key factor, of course, must be the proven bad faith of the offending party. Once again, however, this exception does not appear to have application in this case. There is no indication that the County Assessment Board acted in bad faith, although the Court has concluded that some of its determinations were in error but not obdurate and of calculated design.

"The third theory under which such fees have been awarded is the 'private attorney general exception'. Petitioners' counsel submits that this Court may properly award counsel fees in this case under this doctrine by virtue of which Courts, as in the La Raza Unida case, have allowed such fees on the rationale that the end result of the litigation effectuated Congressional or legislative policy.

"In La Raza Unida the policy effectuated was the Congress' expressed intent as stated in housing legislation. The Court there also considered as elements the fact that the litigation benefited a great number of people and the consideration that private enforcement had been required to effectuate this policy at a great cost to the plaintiff litigants.

'The application of this doctrine in the present case might possibly be more feasible if the Court were to grant all of the relief requested by Appellants. However, as noted earlier, the Court has not sustained the broad attack on the entire County assessment program which appellants have urged.

"Absent an end result which might be argued in essence to effectuate the intention of the State legislature in the promulgation of the County Assessment Law, it is impossible to apply the exception here. Moreover, as only the individual appellants have been successful in this proceeding, it cannot be said that a large number of people have benefited from the litigation.

"Aside from all these considerations, this Court also must take note that in most cases where awards of this nature have been allowed, the class of litigants involved have been relatively indigent groups such as low-rent housing residents, La Raza Unida v. Volpe (supra) or an Indian tribe, Pyramid Lake Paiute Tribe of Indians v. Morton, 360 F. Supp. 669 (1973). This is not the case in the present situation.

"Nonetheless, the individual appellants, with respect to their own individual properties, have been successful in their appeals. There is authority in such situations to assess the record costs upon the defendant municipal agency or body. See Weitzenkorn & Sons v. Commissioners of County of Luzerne, 8 Kulp (Luzerne Leg. R. 165) (1895). And when it appears that the assessors or county commissioners acted in good faith, but that the assessment is too high, the county should be ordered to

pay the record costs of the appeal, but the appellant should not be allowed costs for the subpoenaing and attendance of his witnesses; each party should pay his own witnesses. Cambridge Spring Company's Appeal, 21 C.C. 669, 8 Dist. 55 (1889). See also Pringle's Appeal, 6 Kulp (Luzerne Leg. R. 525), (1892).

"This seems to be the fairest and most equitable thing to do in the present case. Inasmuch as the individual appellants are to be successful in their Appeals, the record costs should be placed upon the County. Since the record in this matter consists of four large volumes this is no small cost. However, the respective parties will be required to pay their own counsel and witness fees.

. . . .

"ORDER

"Now, this 9th day of September, 1974, at 12:05 P.M., the assessed valuation for the property owned by David Feist and Dolores Feist (see Finding of Fact No. 1) for the year 1972 hereby is fixed at: $6,510.00 (18,600 x .35); the assessed valuation for the property owned by Myrtle Singley (see Finding of Fact No. 6) for the year 1972 is hereby fixed at $4,060.00 ($11,600 x .35); the assessed value for the property owned by Margareta Hagstrand (see Finding of Fact No. 11) is hereby fixed at $7,000.00 ($20,000 x .35). All other items of relief requested by petitioners hereby are denied. Each party is to pay his, her or its own costs including attorneys' fees and witness fees, but Luzerne County, appellee-respondent is to pay all record costs i.e., court stenographer's charges for transcripts.

"By the Court
RICHARD L. BIGELOW, J."

Order affirmed.