539 A.2d 61

In Re: Luzerne County Assessment and Valuation for the Year 1986 of Property Owned by Charlotte Davis, Situate in Wright Township, Luzerne County, Pennsylvania. Charlotte Davis, Appellant.

Argued February 23, 1988; before Judges DOYLE, BARRY, and Senior Judge NARICK, sitting as a panel of three.

*Joseph T. Wright,* with him, *Frank J. McDonnell, McDonnell, O'Brien & Wright,* for appellant.

*David R. Lipka,* for appellee.

OPINION BY SENIOR JUDGE NARICK, March 22, 1988:

This tax assessment appeal was brought by Charlotte Davis (Appellant) from a decision of the Court of Common Pleas of Luzerne County which dismissed Ap-

pellant's appeal from a decision of the county's Board of Property Assessment Appeals (Board). We affirm.

The property in question is known as Davis Nursing Home and is owned by Appellant and her husband, William Davis. The nursing home is located along Route 309 in Mountaintop, Luzerne County, Pennsylvania and consists of 1.15 acres which accommodates a one story stone masonry 79-bed facility.

In 1985, the Board in light of the fact that there had been several new nursing homes constructed in the county, and that there had been four recent conveyances of nursing homes, decided that it was necessary to conduct a study of all nursing homes in the county in order to determine if the assessment values on all homes were uniform. As a result of their study, the Board for the 1986 tax year fixed the fair market value of Appellant's property at $1,185,000 and the assessed value of the property at $159,280.[1] The Davis Nursing Home had been previously assessed at $35,170.[2]

At the trial court hearing, the Board presented the testimony of John Anstett, who is Director and Chief Clerk of the county assessor's office, and a licensed real estate broker. Mr. Anstett testified that based upon a study conducted by the assessor's office and his personal examination of the Davis property, it was determined that an adjustment had to be made to the assessed value of the Davis Nursing Home. Mr. Anstett testified from an internal valuation and assessment comparison report prepared by his office which indicated that four nursing homes had recently been sold in Luzerne

---

[1] The assessed value of the property was broken down as follows: $1300 for land and $157,980 for buildings.

[2] The previous assessed value of the property was broken down as follows: $1300 for land and $33,870 for buildings.

County. This exhibit which was admitted into evidence revealed the following with respect to the sale of the four nursing homes:

*Sale # 1*—This involved the sale of a three story brick 120-bed nursing home facility in 1984 for $3,614,400. The sale price per bed was $30,116. The assessed value of this nursing home was $423,520. By applying an 11.7% ratio of assessed value to the sales price, the per bed assessed value was $3,480.

*Sale # 2*—This involved the sale of a one and two story brick 104-bed nursing home facility in 1985 for $1,807,000. The sale price per bed was $17,375. By applying a 15% ratio of assessed value to the sales price, the per bed assessed value was $2,658.

*Sale # 3*—This involved the sale of a one story frame 32-bed nursing home facility in 1982 for $640,000. The sale price per bed was $20,000. By applying a 10% ratio of assessed value to the sales price, the per bed assessed value was $2,000.

*Sale # 4*—This involved the sale of a one story frame and masonry 37-bed nursing home facility in 1984 for $550,000. The sale price per bed was $14,865. By applying a 13% ratio of assessed value to the sales price, the per bed assessed value was $2,000 per bed.

Mr. Anstett explained that based upon the comparable sales figures from these four nursing homes and by comparing them to the Davis facility, it was determined that the fair market value of the Davis Nursing Home was $15,000 per bed. Therefore, in order to make the county's assessment of nursing homes uniform, they increased the Davis Nursing Home assessment from $35,170 to $159,280, the common level ratio being 13.4%.

This same exhibit, which included the comparable sales information, also included a list of thirteen nursing homes in Luzerne County, the number of beds included in the homes, and the per bed assessed value. The per bed assessed value with respect to each of the thirteen homes ranged from $2000 to $2600. Mr. Anstett indicated that the per bed assessed value came out to be approximately $2500 per bed for newer homes and $2000 per bed for older homes.[3] Mr. Anstett testified that the same procedure was applied to all nursing homes in the county, that the common level ratios applied to the different nursing homes ranged from 11.7% to 15%,[4] and that the common level ratio determined by the State Tax Equalization Board was 13.6% for 1984.[5]

Mr. Anstett further testified that the approach utilized by the Board in determining the fair market value of Appellant's property by comparing it to other parcels of real estate is a customary procedure. According to Mr. Anstett, this method of determining fair market value, which is known as the market demonstration approach, requires that the subject property be compared to properties of similar nature and use in the general geographic area, as well as a determination of what some of these similar properties have recently sold for. Adjustments are then made for physical wear, tear, age and location. As to why the real estate values of the nursing homes in the county were classified on a per

---

[3] The record indicates that the value assessed on the Davis home was approximately $2000 per bed.

[4] Our review of the record reveals that the range of common level ratios applied to the different nursing homes in Luzerne County did not range from 11.7% to 15% but from 10% to 15%.

[5] Therefore, the common level ration of 13.4% utilized with respect to the Davis Nursing Home was lower than that set forth by the State Tax Equalization Board.

bed basis, Mr. Anstett responded that different nursing facilities provide different types of auxiliary services to their patients but that it is the bed in the nursing homes that provides the income stream. Mr. Anstett stated that the Board's method allowed the use of the facility in conjunction with the location to be considered.

Appellant presented the expert testimony of Mr. George Bell. It was Mr. Bell's testimony that the fair market value of the Davis Nursing Home was $210,000. Mr. Bell disagreed with the per bed valuation because no adjustments were made for location and also because newer nursing homes have certain amenities available to patients which the Davis Nursing Home does not provide to its patients. Mr. Bell based his fair market value determination on the comparison of other commercial properties located in Mountaintop, including two restaurants and a building which had previously been the location for a lawn equipment-lawn care business.

The trial court affirmed the Board's decision and this appeal followed. The primary issue presented for our consideration on appeal is whether the method and manner of assessment utilized by the Board which placed a per bed assessed value on a nursing home was arbitrary, capricious, and in violation of the Pennsylvania and United States Constitutions.

Our scope of review herein is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Lycoming County Appeal,* 100 Pa. Commonwealth Ct. 616, 515 A.2d 335 (1986). In tax assessment proceedings, the trial court is the factfinder and matters of credibility and evidentiary weight are within the factfinder's province. *M . W. Kellogg Co. Appeal,* 89 Pa. Commonwealth Ct. 320, 492 A.2d 130 (1985). The trial court may believe all or none

of the expert's testimony, or part of one expert and part of another. *Lycoming County.* The proper order of proof in tax appeals is for the taxing authority to first present its assessment record into the evidence. *Deitch Co. v. Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965). The assessment by the taxing authority is presumed valid. *Lycoming County; Deitch.* The burden then shifts to the taxpayer to respond with credible relevant evidence. *See Pittsburgh Des Moines Steel Co. v. The Board of Property Assessment,* 103 Pa. Commonwealth Ct. 61, 519 A.2d 1080 (1987); *Deitch.* If the taxpayer alleges a lack of uniformity, he may sustain his burden of proof by demonstrating that a lower ratio of assessment to actual value has been applied to similar properties. *See Feist v. Luzerne County Board of Assessment Appeals,* 22 Pa. Commonwealth Ct. 181, 188-89, 347 A.2d 772, 777 (1975) citing *Valley Forge Golf Club, Inc. Tax Appeal,* 3 Pa. Commonwealth Ct. 644, 650, 285 A.2d 213, 216 (1971).[6] The constitutional uniformity requirement mandates that the assessment of a particular property shall reflect an assessment as not more than the common level of assessments prevailing in the district as a whole. *Feist.*

In the instant matter, the trial court accepted the testimony presented by the Board as more credible and specifically noted that the Appellant failed to provide expert testimony regarding comparable sales or values of any other nursing homes in the county. We believe that by failing to address comparable sales or values of other nursing homes in the county, that Appellant has

---

[6] In *Valley Forge,* the court reasoned that if the lack of uniformity in a golf course assessment is the issue the taxpayer may carry his burden of proof by showing first the assessments of other golf courses in the county and second that the actual value of other golf courses in the county was different from that determined by the county assessment office.

failed to meet her burden of proof. On the other hand, the Board presented evidence that it determined the fair market value by considering other homes in the county as well as the geography, age, wear, tear and location of the Davis Nursing Home. The Board also presented evidence that a common level ratio of 13.4% was applied to the Davis Nursing Home, that the same procedure was applied to all nursing homes in assessing their values, and that the common ratios applied to nursing homes throughout the county ranged from 10% to 15%.[7] In that credibility determinations are not a review prerogative of this Court, and there is substantial evidence to support the trial court's findings, we will affirm.

## ORDER

AND NOW, this 22nd day of March, 1988, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby affirmed.

---

[7] *See* footnote 4.