606 A.2d 629

Donald HIBBS, Container Corporation and
Chalmers & Kubeck, Inc., Appellants,

v.

CHESTER–UPLAND SCHOOL DISTRICT, Board of School
Directors of Chester–Upland School District, Leo S. Holmes,
Ellen Smith and William Costello, Appellees.

ZENITH PRODUCTS CORPORATION, Appellant,

v.

CHESTER–UPLAND SCHOOL DISTRICT, Board of School
Directors of Chester–Upland School District, Leo S. Holmes,
Ellen Smith and William Costello, Appellees.

CONTAINER CORPORATION OF AMERICA, Appellant,

v.

CHESTER–UPLAND SCHOOL DISTRICT, Board of School
Directors of Chester–Upland School District, Leo S. Holmes,
Ellen Smith and William Costello, Appellees.

CHALMERS & KUBECK, INC., Appellant,

v.

CHESTER–UPLAND SCHOOL DISTRICT, Board of School
Directors of Chester–Upland School District, Leo S. Holmes,
Ellen Smith and William Costello, Appellees.

Joseph STRONG, Eric Strong, Neil Strong, Partners,
trading as Jen Industrial Campus, Appellants,

v.

CHESTER–UPLAND SCHOOL DISTRICT, Board of School
Directors of Chester–Upland School District, Leo S. Holmes,
Ellen Smith and William Costello, Appellees.

Commonwealth Court of Pennsylvania.

Argued Nov. 20, 1991.

Decided March 26, 1992.

Reargument Denied May 14, 1992.

558

Hugh M. Emory and W. Mark Mullineaux, for appellants.
Leo A. Hackett, for appellees.

Before CRAIG, President Judge, and COLINS, PALLADINO, McGINLEY, SMITH, PELLEGRINI and KELLEY, JJ.

KELLEY, Judge.

Can a real estate tax that is computed under a tax equalization formula specifically authorized by statute be invalid if proven to be in violation of the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, § 1? For the following reasons, we believe that it can.

The appellants in these consolidated cases (collectively, taxpayers) are residents and taxpayers of Chester Township, Delaware County, a constituent municipality of Chester–Upland School District (district). The district was formed on July 1, 1972 by the merger of the formerly independent school districts of Chester Township (township), Chester City (city) and Upland Borough (borough), all located in Delaware County. Properties in the township and the borough are assessed by Delaware County, while properties in the city are assessed both by Delaware County and by the city.

At the time of the merger, the Board of School Directors (board) of the district adopted as its method of tax equalization one of the methods prescribed in the Public School Code of 1949 (Code).[1] At that time, the Code provided two alternate methods of equalization for districts located in one county but composed of two or more municipal governments, at least one of which levied taxes utilizing county assessments and at least one of which levied taxes utilizing municipal assessments. Section 672.1(c) of the Code, added by the Act of August 7, 1961, P.L. 968, *as amended,* 24 P.S. § 6–672.1(c).

The first of these methods, referred to as the Variable Rate Method, determines the total amount of tax that the taxpayers of each municipality must pay by applying a ratio of each municipality's most recent market values as deter-

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

mined by the State Tax Equalization Board (STEB) to the total market value of the district. The tax rate for the municipality is then set to yield the required proportion. Section 672.1(a).

The district selected the second method, referred to as the Adjusted STEB Method. Under this method, the market value of properties in municipalities that use county assessments (the township and the borough) is the county assessment itself, divided by the ratio of assessed values (AV) to market values (MV) in the municipality as determined by STEB. For municipalities using municipal assessments (the city), market value is calculated by a formula which divides the municipal assessment by the product of the ratio of AV to MV in the municipality as determined by STEB and the ratio of AV (municipal) to AV (county) of the same properties. Section 672.1(b).

A class action suit in equity was brought on behalf of taxpayers of the borough in 1972, in which the plaintiff class alleged that the board had abused its discretion in the selection of the method. Although the trial judge agreed, the Court of Common Pleas of Delaware County, sitting en banc, sustained the district's exceptions to the trial judge's findings of fact and conclusions of law and dismissed the complaint, holding that the board had not abused its discretion. This unpublished decision, *Raymond Ruditys v. Chester–Upland School District,* Delaware County Common Pleas No. 8042 of 1972, filed Aug. 18, 1975, figures prominently in the case now before us. No appeal was taken from *Ruditys.*

In the years since *Ruditys,* the board continued to adopt, on an annual basis, the same method of equalization. In 1979, however, Section 672.1 was amended to provide three additional options to the Adjusted STEB method, and to mandate that, where a district utilizes either the Variable Rate Method or the Adjusted STEB method, no municipality shall pay an aggregate amount in school property taxes which, as a percentage of total school property taxes, shall

exceed the ratio of its MV to the total MV of the district, as determined by STEB.

The board commissioned a study in 1980 to determine whether its equalization methods should be changed. This study recommended that the Adjusted STEB method continue to be employed.[2] No further studies or changes have been made.

Taxpayers filed the present case in the trial court in June of 1985. In their complaint, taxpayers allege that the Adjusted STEB method results in township taxpayers paying at least 22% more taxes than similarly situated taxpayers in the city, which violates the Uniformity Clause of the Pa. Const. art. VIII, § 1, and the Equal Protection Clause of the U.S. Constitution.

Both parties filed motions for summary judgment. On September 12, 1990, the trial judge granted the district's motion for summary judgment, finding that *Ruditys*, being the law of the forum, was controlling. Taxpayers now argue that reliance on *Ruditys* was in error and that the alleged unconstitutional result mandates that the tax be declared invalid, despite the fact that the taxing method is authorized by statute. The district responds that *Ruditys* controls and, if it does not, taxpayers have not met their burden of showing an unconstitutional result. The district requests that, should we reverse the trial court, the case should be remanded for additional testimony and evidence in the trial court.

## EFFECT OF *RUDITYS*

The trial judge entered summary judgment in favor of the district based on "the binding effect of the *Ruditys* decision," holding that "the issues in the present case had been determined by [*Ruditys*]."

■ Initially, we note that the plaintiffs in *Ruditys* were taxpayers from the borough, not from the township, as in

2. Report of John A. Yannocone & Co., Reproduced Record (R.) at 147a–151a.

this case. Therefore, *Ruditys* cannot operate as *res judicata*, as taxpayers here were not parties to the prior proceeding. *See, e.g., Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975).

■ Moreover, collateral estoppel can bar a subsequent action only if the issue decided in the prior adjudication was identical with the one presented in the later action. *See, e.g., Department of Transportation v. Crawford*, 121 Pa.Commonwealth Ct. 613, 550 A.2d 1053 (1988); *Glasgow, Inc. v. Department of Transportation*, 108 Pa.Commonwealth Ct. 48, 529 A.2d 576 (1987).

■ *Ruditys* involved only a claim that the board abused its discretion in selecting the method of equalization. The trial court held that although the selection of some other method might result in greater equality among the taxing districts, because the district acted within the statutory guidelines and because no evidence of improper motivation or failure to make a reasonable inquiry into the facts was presented, no abuse of discretion had been shown.

In the present case, Counts I, II, III and V of the complaint raise state and federal constitutional issues, which were not present in *Ruditys*, and Count IV, while arguing abuse of discretion, alleges improper motive on the part of the board, again distinguishing the present case from *Ruditys*.

Additionally, while *Ruditys* may be *stare decisis* as to the legal analysis of abuse of discretion by the district, the passage of a considerable amount of time renders this case factually distinguishable. Taxpayers have presented evidence of unequal taxes based on data from 1984 and 1988, well after the decision in *Ruditys*. Furthermore, the amendments to Section 672.1 of the Code now allow the district additional options, which may be relevant in analyzing the claim of abuse of discretion.

We therefore conclude that the trial judge erred in granting summary judgment to the district. We must next

determine whether summary judgment should be directed in favor of taxpayers.

## UNIFORMITY

The Pa. Const. art. VIII, § 1 provides that:

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

The thrust of the district's argument appears to be that because the district imposed an equalization formula which is authorized by statute, such an imposition cannot constitute an abuse of discretion and, therefore, cannot be found to violate the Uniformity Clause. In *Carl v. Southern Columbia Area School District*, 41 Pa.Commonwealth Ct. 527, 400 A.2d 650 (1979), we found that an occupation tax produced an unconstitutional result, even though it was the *sole method authorized by statute.*

Judge Blatt, speaking for the court in *Carl*, stated that "[w]hile it may be true that this multi-county school district has no alternative but to accept the classifications furnished by each constituent county, that does not necessarily make the classification uniform from a constitutional point of view." *Id.*, 41 Pa.Commonwealth Ct. at 531, 400 A.2d at 652.

The district correctly points out that *Carl* was a case involving the imposition of an occupation tax by a multi-county district, which resulted in "substantially higher" taxes being imposed on the residents of one county. The district argues that no equalization formula was involved in *Carl* to ensure uniformity, whereas the present case involves a challenge to the choice of the equalization formula itself.

■ While recognizing that *Carl* involved a substantially different factual situation, we believe that it is applicable to the present case. A tax that violates the Uniformity Clause is unconstitutional and cannot be collected. The fact that either the tax itself or the manner of calculating it may be

explicitly authorized by statute does nothing to change that result. In *Carl*, the district had no discretion under the statute, yet the unconstitutional result barred collection of the tax. *A fortiori*, where, as here, discretion in choosing an equalization formula is granted by statute, a choice producing an unconstitutional result constitutes an abuse of that discretion.

We conclude, therefore, that taxpayers have advanced a cognizable constitutional claim. We must still decide whether to direct summary judgment in favor of taxpayers.

## SUMMARY JUDGMENT

 It is well established that in considering a motion for summary judgment, the trial court must examine the whole record, including the pleadings, any depositions, any answers to interrogatories, admissions of record, if any, and any affidavits filed by the parties. *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989). From this examination, the trial court will determine the question of whether there is a genuine issue as to any material fact. *Id.* On this critical question, the party who brought the motion has the burden of proving that no genuine issue of fact exists. *Id.*

 Taxpayers produced survey results showing that the aggregate school taxes paid on properties sold within the city during 1984 was 2.1182% of the aggregate of sales prices received on such sales, while that ratio as applied to properties in the township during the same year was 2.6437%.[3] This difference resulted in school taxes for property with equivalent sales prices being 24% higher in the township than in the city. A second study produced by taxpayers surveyed over 200 sales that occurred in the first six months of 1988. This study showed that the ratio of taxes to selling price in the city was 1.9824%, while the ratio in the township was 2.4288%, resulting in the tax imposed

**3.** R. at 71a.

on a township property being 22.5% higher than that imposed on a city property of equivalent selling price.[4]

These results were accompanied by an affidavit of attesting to their truthfulness.[5] The district, however, denied that the survey was "a valid, accurate or relevant example" of the application of the equalization formula.[6] The district further argued in their answer that the survey results constituted a report requiring the testimony of an expert witness for which no qualifications had been established or approved by the court.[7]

It appears, however, that the district did not file an opposing affidavit controverting the survey results. While the mere fact that a party fails to file counter-affidavits does not render summary judgment appropriate, *Knecht v. Citizens & Northern Bank*, 364 Pa.Superior Ct. 370, 528 A.2d 203 (1987), such a failure does require the court to ignore controverted facts appearing only in the pleadings, and to consider all uncontroverted facts contained in the pleadings and affidavits. *O.S.C. Co. v. Lackawanna River Basin Sewer Authority*, 121 Pa.Commonwealth Ct. 570, 551 A.2d 376 (1988).[8]

We have held that where a taxpayer alleges a lack of uniformity, he may sustain his burden of proof by demonstrating that a lower ratio of assessment to actual value has been applied to similar properties.[9] *Davis Appeal*, 114

4. R. at 98a.

5. R. at 64a.

6. R. at 36a.

7. R. at 37a.

8. Additionally, there is some authority that the filing of cross-motions for summary judgment, in and of itself, establishes that no disputed issues of material fact are outstanding. Goodrich–Amran 2d § 1035(b):7 (where the opposing parties both file motions for summary judgment, thus agreeing that there are no disputed issues of material fact, the court may proceed to an adjudication of the merits of the case on the cross-motions for summary judgment).

9. We recognize that taxpayers here are not challenging the assessments of their properties, but rather the equalization formula that allegedly produces a lower ratio of taxes to actual value for similar

Pa.Commonwealth Ct. 537, 539 A.2d 61 (1988). Perfect uniformity or absolute equality is not obtainable, but only a limited variance is permitted to satisfy the constitutional requirement of uniformity. *Columbia Gas Transmission Corp. v. Commonwealth,* 468 Pa. 145, 360 A.2d 592 (1976). While we have never indicated what specific amount of variance will violate uniformity, we are of the opinion that a variance in excess of 20%, as shown here, is more than sufficient. Accordingly, we conclude that taxpayers have met their burden of proof in showing lack of uniformity, and will direct the trial court to enter summary judgment in their favor.

■ Although we now hold that the application of an equalization formula that produces an unconstitutional result is barred, we must remand to the trial court to determine the appropriate relief. Taxpayers argue that because the tax is unconstitutional, further collection of the tax must be enjoined. We agree, and therefore direct the trial court to enjoin future collection of the tax based on the present equalization formula. *Columbia Gas.* Taxpayers further request that the trial court be ordered to grant a refund to the four taxpayers who have filed timely claims pursuant to Section 1 of the Act of May 21, 1943, *as amended,* 72 P.S. § 5566b, and that future assessments be made solely on the basis of county assessments.

The trial court, however, did not have an opportunity to consider the refund issue, nor does the record at this point contain sufficient facts for such a determination. On remand, therefore, the trial court shall determine whether taxpayers are entitled to a refund and, if so, in what amount. Finally, although we have determined that the present method utilized by the district produces unconstitutional results, it does not follow that the district must adopt a method based solely on county assessments. We there-

properties. Because in the final analysis it is uniformity of taxes and not necessarily of assessments that is constitutionally required, proof of a substantial difference in the ratio of taxes paid to actual value of similar properties is sufficient to sustain a uniformity challenge.

fore decline to direct that the district adopt any specific equalization method, but merely that it utilize its discretion in adopting, among the several methods authorized by statute, a method that will produce uniform taxation throughout the district.

Accordingly, the orders of the Court of Common Pleas of Delaware County granting summary judgment are reversed, and this matter is remanded for entry of judgment in favor of taxpayers consistent with this opinion.

## ORDER

NOW, this 26th day of March, 1992, the orders of the Court of Common Pleas of Delaware County granting summary judgment in favor of Chester–Upland School District are reversed, and this matter is remanded for entry of summary judgment in favor of appellant taxpayers.

On remand, the trial court shall direct appellee Chester–Upland School District to select and utilize a method of tax equalization which causes uniform taxes to be levied on all owners of real estate within the Chester–Upland School District. The trial court shall also determine whether appellants are entitled to refunds, attorneys fees and costs and, if so, in what amount.

Jurisdiction relinquished.

COLINS and McGINLEY, JJ., concur in the result only.