**Fuller v. D&H Corporation**

*Lawrence M. Ludwig,* for plaintiffs.

*Joseph A. O'Brien* and *Timothy M. Kelly,* for defendants.

MINORA, *J.,* October 13, 2006—

## INTRODUCTION

Currently before this court is a motion for summary judgment submitted by D&H, defendants in this action. Concurrently, in order to decide the instant motion, this court must interpret the consequences of an agreement reached decades ago.

In brief, the predecessors of both parties to this action had entered into an agreement for the conveyance of real property. Plaintiffs' predecessors conveyed the real property; defendants' predecessors purchased the real property and as a necessary condition were required to con-

struct and maintain a bridge to serve as a servient right-of-way over the parcels conveyed by the plaintiffs' predecessors and connecting their now bisected parcels of realty. Decades after the original agreement, plaintiffs claim that defendants ceased to perform continued maintenance on the bridge as required under the original agreement. As a result, the bridge was allowed to reach a state of disrepair and defendants ultimately removed it.

Plaintiffs insist the original agreement obligates the defendants to perform continued maintenance of the bridge into the future as a result of the agreement reached decades ago. Plaintiffs seek specific performance and ask this court to order defendants to construct a new bridge. In response, defendants filed a motion for summary judgment arguing generally that plaintiffs' claims are time-barred by the applicable statute of limitations. This court now considers defendants' motion for summary judgment.

## STATEMENT OF THE CASE

The plaintiffs filed a praecipe for summons in civil action on January 6, 1999 against D&H Corporation, t/a D&H Railway, The Delaware and Hudson Company Inc., Guilford Transportation Industries Inc. t/a Delaware & Hudson Railway Company, Canadian Pacific Corporation, Canadian Pacific Limited and CP Rail System and successors and assigns. Plaintiffs filed their complaint later, on July 8, 2002, alleging the following counts against the defendants:

(a) Count 1—Breach of contract, specific performance

(b) Count 2—Specific performance of deed covenant

(c) Count 3—Breach of contract, damages

(d) Count 4—Restitution for unjust enrichment

(e) Count 5—Breach of the implied duty of good faith

(f) Count 6—Promissory estoppel

Plaintiffs own approximately 300 acres in Dalton, Lackawanna County, Pennsylvania, hereinafter referred to as the Fuller estate. Plaintiffs' predecessors, Mortimer B. Fuller and Kathryn S. Fuller, had conveyed two parcels of land to the Delaware, Lackawanna and Western Railroad Company (the DL&WRR), defendants' predecessors, by deed dated November 22, 1912. This conveyance enabled the defendants' predecessors to construct what the defendants' predecessors had referred to as the "new line" between Scranton, Pennsylvania, and Binghamton, New York, which later became known as the "main line," and most recently, the "freight main line."

The terms of the deed excepted and reserved a right-of-way over or across parcel number 2 for Mortimer B. Fuller and his heirs, executors, administrators and assignees. This right-of-way was to be a location determined by and in accordance with the plan and specifications prepared by the engineering department of the DL&WRR. Further, the construction for this right-of-way for plaintiffs' predecessors was to be done under the direction and supervision of the chief engineer of the DL&WRR or his designee. The bridge was then constructed, and it remained the only means of access to

Dalton from the Fuller estate. Additionally, it was one of two ways available to access the Fuller estate.

Following the construction of the bridge, DL&WRR and its successors and assigns inspected, maintained, and repaired the bridge pursuant to the conveyance/agreement between both plaintiffs' and defendants' predecessors. Through various phases of corporate restructuring, the DL&WRR ultimately became Delaware and Hudson Railway Company (D&H), which was an indirect subsidiary of the Canadian Pacific Railway Company. D&H is a Delaware corporation with its principal place of business in Clifton Park, NY. It was during the 1990s when events transpired to create a forum for the dispute currently between the parties to this case.

During the early part of the 1990s, it was found that the bridge had deteriorated to the point that it was hazardous. Events following the then-recognized deteriorated state of the bridge define the arguments set forth by each of the parties on defendants' motion for summary judgment currently before this court.

In the complaint, the plaintiffs argue that the bridge at issue was essential to the bargain between plaintiffs and defendants, and it was "the only legal consideration" the plaintiffs received in exchange for granting the parcels to the defendants. Complaint, ¶21. Plaintiffs further claimed that the deed contained a release of statutory obligations for the DL&WRR to provide crossings, which in the deed is stated:

"It is particularly covenanted and agreed, by and between the parties hereto that the said parties of the first part hereby release and forever discharge the said railroad company of and from all other claims for damages on

account of the vacation of public road on the Thomas Smith farm leading to the estate of E.L. Fuller lands, which said public road crosses, the proposed new line of the D.L.&W.R.R. Company at or about station 204." Complaint, ¶22, citing Fuller deed.

The plaintiffs argue this provision references all crossings *other than* the bridge at issue. (emphasis supplied) They also argue that DL&WRR fully funded and constructed the bridge, and affirmed the duty to maintain and repair the bridge, and if necessary, replace it. The plaintiffs classify this agreement as a covenant running with the land rather than a contractual agreement.

Plaintiffs' version of the facts provides that after construction of the bridge, DL&WRR and its successors and assigns regularly inspected, maintained and repaired the bridge according to the alleged covenant. However, in 1990, plaintiffs allege that defendants inspected but failed to maintain or repair the bridge. Complaint, ¶26. The plaintiffs argue that the defendants are successors and assigns of DL&WRR in the capacity of running the business on the main line in Lackawanna County. As such, defendants had a legal responsibility regarding upkeep to the bridge. Complaint, ¶ 27. Plaintiffs claim they have made repeated requests for defendants to inspect, maintain, and repair the bridge. Complaint, ¶28.

The plaintiffs claim that in February of 1995, representatives of the defendants, with personal identities unknown to the plaintiffs, demolished the bridge according to the defendants' direction. Complaint, ¶29. The demolished bridge was apparently replaced with access ramps descending from Fuller Road down to the main line right-of-way elevation, and a makeshift crossing at track level. Complaint, ¶29.

In this motion for summary judgment, defendants argue that the deed is void of language that creates a requirement for the defendants or their successors to maintain or replace the bridge. Defendants argue that although a bridge was provided to the plaintiffs, the deed includes no language requiring a future and ongoing responsibility to maintain the bridge. Defendants argue that D&H never maintained the bridge. In fact, they allege that the Fullers themselves had performed routine maintenance in that they plowed and sanded the bridge in winter months. In addressing the issue of bridge inspection, it becomes clear the parties differ on a significant issue of fact that would preclude this court from granting the defendants' motion for summary judgment.

Defendants claim that D&H periodically inspected the structural soundness of the bridge. During the September 2, 1992 inspection of the bridge, D&H observed "tipping, cracking and spalling." Defendants' summary judgment motion at ¶17. The bridge inspector noted the bridge was in an advanced state of decay and presented a real safety risk. Defendants allege they communicated the bridge hazard to the Borough of Dalton on November 10, 1993. Receiving no reply from the borough, D&H notified the borough in December of 1993 that it would close the bridge in January, 1994. In March 1994, apparently due to safety risks to both the public and railroad operations beneath the bridge, D&H placed barricades on either side of the bridge so that no traffic could cross it.

D&H performed another bridge inspection in June, 1994, where it was determined by the inspectors as being in "an advanced state of deterioration." The inspector recommended that the bridge be demolished because it

had apparently "deteriorated beyond rehabilitation." In February, 1995, contractors hired by D&H removed the bridge.

## LEGAL ARGUMENT

Before the court is defendants' motion for summary judgment. Rule 1035 of the Pennsylvania Rules of Civil Procedure provides the standard for summary judgment. Rule 1035.2 states:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

"A material fact is one that directly affects the outcome of the case." *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662, 664 (Pa. Super. 2000). "[T]he trial court will determine the question of whether there is a genuine issue as to any material fact." *Hibbs v. Chester-Upland School District,* 146 Pa.Commw. 556, 564, 606 A.2d 629, 633 (1992) citing *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989). "On this critical ques-

tion, the party who brought the motion has the burden of proving that no genuine issue of fact exists." *Id.* "As with all summary judgment cases, the court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party as to the existence of a triable issue." *McCarthy v. Dan Lepore & Sons Co. Inc.,* 724 A.2d 938, 940 (Pa. Super. 1998).

In the case at bar and following the dictates of *McCarthy, id.,* we are compelled to construe the disputed agreement as a covenant running with the land for purposes of this motion, as this resolves all doubts against the moving party defendants and in favor of the non-moving party per the dictates of Pa.R.C.P. 1035.

Defendants' argument supporting their motion for summary judgment relies heavily upon the expiry of the applicable statute of limitations, which defendants argue, bars the plaintiffs' claims. The defendants cite case law explaining when the statute of limitations period begins running. "The statute of limitations begins to run as soon as the right to institute and maintain a suit arises." Defendants' memorandum of law in support of the motion for summary judgment, p. 7, citing *Weik v. Estate of Brown,* 794 A.2d 907, 909 (Pa. Super. 2002).

The issue of disagreement between the parties is the classification of the agreement for the bridge, and therefore, which statute of limitations period applies to the action. Defendants argue that the agreement is governed entirely by contract law; therefore a four-year statute of limitations period applies. Defendants' memorandum of law in support of motion for summary judgment, p. 7, citing 42 Pa.C.S. §5525. Defendants argue the breach

occurred when the bridge fell into a state of disrepair because of defendants' failure to maintain the bridge. Defendants' memorandum of law in support of motion for summary judgment, p. 7. As a result, defendants' calculation of the statute of limitations period began in March of 1994, when plaintiffs' attorney contacted defendants demanding that defendants perform bridge repair. *Id.* As a result, defendants argue the plaintiffs should have filed their complaint no later than March 1998. The plaintiffs filed the praecipe for summons in civil action on January 6, 1999. Therefore, defendants argue, the complaint was filed after the statute of limitations period had run, and as a result, plaintiffs' claim is barred.

Plaintiffs, in contrast, insist the agreement between the parties is classified as a covenant running with the land. As such, the applicable statute of limitations for the plaintiffs' claim is one of the following: (1) 21 years for an easement covenant in a deed, or (2) five years for actions at law for specific performance of a buyer's ongoing covenant (even if such covenant does not run with the land) if it is consideration for its realty acquisition. Plaintiffs' brief in opposition to defendants' motion for summary judgment, p. 33.

Construing these contrasting arguments in the light most favorable for the non-movant plaintiffs herein, this court has determined that a genuine issue of material fact exists as to when the breach can actually be determined to have occurred: at the time the bridge fell into a state of disrepair, or at the time the bridge was actually removed. This disputed factual issue precludes the granting of defendants' motion for summary judgment under Pa.R.C.P. 1035.2. An appropriate order therefore follows:

310

## ORDER

And now, October 13, 2006, defendants' motion for summary judgment is hereby denied and dismissed.